UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| JOSHUA VAUGHAN, </br>   Plaintiff, </br></br> vs. </br></br> VERMONT LAW SCHOOL, INC., and </br> SHIRLEY JEFFERSON, </br>   Defendants. | ) </br> ) </br> ) </br> )   No. 2:10-cv-276-wks </br> )   Jury Trial Demanded </br> ) </br> ) </br> ) </br> ) |

PLAINTIFF'S REPLY MEMO SUPPORTING HIS
MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. 69)

Plaintiff, Joshua Vaughan ("Vaughan"), respectfully submits this reply memo supporting his motion for partial summary judgment (Doc. 69).

I.     THE AUGUST 15-16 SEXUAL LIAISON: VLS
       HAD NO AUTHORITY TO DISCIPLINE FOR
       PRIVATE, PRE-MATRICULATION CONDUCT

    A.     No Contract Without "Meeting of the
           Minds" and Objective Manifestation Thereof

VLS and Jefferson admit that the August 15-16 conduct occurred *before* Orientation week began, *before* the Handbook was distributed, and *before* Vaughan or any students registered for any class. They also do not dispute that Vaughan had never seen the Handbook as of August 15-16. They nonetheless contend (Obj. at 9-12) that the Handbook constituted a binding *contract* between VLS and Vaughan because of a vague notion that "both Vaughan and RH were already part of the VLS community." Obj. at 9. (The term "VLS community" is not defined anywhere in The Handbook.)

Defendants' contention is diametrically opposed to the bedrock principles of contract law. In Vermont, as in every U.S. jurisdiction, there is no contract without a

1

"meeting of the minds" and an objective manifestation thereof. E.g., Starr Farm Beach Campowners Ass'n, Inc. v. Boylan, 174 Vt. 503 (Vt. 2002) ("enforceable contract must demonstrate a meeting of the minds of the parties" and mere letters with information about proposed agreement did not constitute a contract); Milot v. Calkins, 150 Vt. 537, 538 (Vt. 1988) ("if the agreement itself does not evidence a 'meeting of the minds' on all essential particulars . . . there is no valid contract"); see also, Tractebel Energy Marketing, Inc. v. AEP Power Marketing, Inc., 487 F. 3d 89, 95 (2d Cir. 2007) (applying New York law) ("To create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms. . . .There must be an objective meeting of the minds sufficient to give rise to a binding and enforceable contract").

The conclusion that notice occurs at the moment of matriculation – and VLS' acknowledgement that notice is required for the Handbook to become binding – is expressly reinforced in the Handbook's own language:

> A student is held to have notice of this Code of Conduct by enrolling in a Vermont Law School class.

Ex. 1 at VLS 81 (Doc. 69-2). There is simply no other reason VLS can have set forth this language in its Handbook.

Here, the August 15-16 facts relied on by VLS and Jefferson do not come close to manifesting a "meeting of the minds." Absolutely nothing about the Code of Conduct or a "contract" had been communicated to Vaughan. The claim that he was "in the community" – whatever defendants mean by that vague phrase – is without legal significance in terms of objectively manifesting consent to a contract. The same is true of the facts recited by defendants – that Vaughan (1) moved to South Royalton with the purpose of attending

2

VLS, (2) he paid a deposit to VLS, (3) he had been approved for student loans, (4) he belonged to a Facebook group (which by the way was not even run by VLS), and (5) he met and socialized with other (future) VLS students. Not one of these "facts" has anything at all to do with Vaughan manifesting assent that he was entering a contract or even being aware that one was being proposed.

        B.       <u>The Handbook's Own Language Does Not Cover Pre-Matriculation Conduct</u>

Even if Vaughan somehow contractually assented to the Code of Conduct "Contract" without realizing it existed, the Code's own language does not cover the pre-matriculation conduct at issue.

Defendants point (Obj. at 3) to the "reputation-safety" language from the Code of Conduct language, but they fail to mention that this very section goes on to state:

> A student is held to have notice of this Code of Conduct by enrolling in a Vermont Law School class.

Ex. 1 at p. 77 (Doc. 69-2). It is simply inconceivable that this sentence is not a limitation on the "reputation-safety" clause. Otherwise it would be surplus language, with no meaning at all.

In addition, VLS cannot change the centuries-long established rules of contracts by unilaterally declaring that it has authority to discipline persons who have never seen or agreed to its rules.

II.      VLS HAD NO AUTHORITY TO DISCIPLINE PLAINTIFF
           <u>FOR DROPPING BY OFF-CAMPUS, PRIVATE APARTMENTS</u>

VLS and Jefferson claim (Obj. at 13- 15) authority to discipline for the two off-campus social "drop-bys" under the following Code of Conduct language:

> This policy applies when those actions occur <u>off-campus</u> in connection with events sponsored by VLS or VLS-approved organizations, or in connection with official business undertaken for VLS, <u>or in other circumstances where an action could have a significant impact on the educational or employment environment or the reputation or integrity of VLS, or could pose a threat to the safety or other interests of VLS or members of the VLS Community</u>.

Emphasis *by VLS/Jefferson*.

Defendants make no claim that these events were sponsored by VLS or VLS-approved organizations, or in connection with VLS official business. That leaves

- "significant impact on educational environment,"
- "significant impact on . . . the reputation or integrity of VLS," and
- "threat to safety."

None of these is remotely implicated by the admitted facts here.

The universe of information about these events is contained in the two student witness statements from LR and LW, quoted in full at pp. 6 and 7 of plaintiff's motion. These were nothing more than routine drop-by social visits. They are the most commonplace of university/law school student social encounters. Graduate and professional students in 2010 America simply do not live in gated, locked mansions where any intrusion becomes a "significant impact on their educational environment" or a "threat to their personal safety" justifying academic discipline.

As made clear by the LR and LW statements these students lived, like virtually all VLS students, in shared private houses which included both men and women, where doors were unlocked and open, and where students entered regularly for normal student social interaction including parties. In the LR statement, the student told Vaughan he couldn't stay, and continued, "so he left." In the LW statement there was a party (in which

Vaughan was participating) going on "at her friends'" downstairs apartment of a house in which LW had an upstairs apartment, Vaughan came up to try to get her to come to the party, and someone from the party came up and asked him to leave. These are the most trivial, mundane, commonplace social events of an academic community. There is no suggestion that Vaughan threatened these students in any way.

VLS is a school, after all, for students principally in their twenties. Students routinely enter each others' rooms and apartments without an advance written invitation. It is simply inconceivable that these two social drop-bys affected a "*significant* impact on academic environment," a "*significant* impact on reputation or impact of VLS," or a "threat to the safety of members of the VLS community." No reasonable jury could so find.

III. VLS HAD NO AUTHORITY TO DISCIPLINE FOR UNIDENTIFIED STATEMENTS OR CONDUCT DESCRIBED ONLY AS "CREEPY," "WEIRD," "INAPPROPRIATE," OR "SEXUAL"

VLS and Jefferson claim authority to discipline for unidentified statements under the same Code provision set forth in the foregoing heading. There are at least three defects with defendants' argument.

First, as with the social drop-bys, nothing in the information available to VLS about the supposed statements – "creepy," "weird," "inappropriate" or "sexual" – was descriptive or concrete enough to reasonably create a "*significant* impact on academic environment," "*significant* impact on reputation or impact of VLS," or "threat to the safety of members of the VLS community."

Second, it is intrusive enough that VLS seeks to be the social police of comments made at off-campus locales completely unrelated to VLS. But even if the Handbook applies

5

to such statements under the hook of "significant impact on academic environment" or "threat to safety," here VLS had not one single fact concerning the *content* of any allegedly offensive statement. There was not a word about the *content* of the alleged statements in the Church Engle interviews, and there was not one word about *content* in the evidence VLS introduced at the September 3, 2010 hearing. Defendants have not identified a single offensive statement in the opposition brief. Based on this lack of evidence, Vaughan is entitled to summary judgment as to these purportedly offensive, but wholly unidentified, statements.

Third, VLS and Jefferson make a confusing statement at page 13, where they say "the conduct included 'jokes, derogatory expressions or comments . . . and other conduct offensive to a reasonable woman." To be clear, the quotation is not to any documented or claimed conduct of Vaughan but is a portion of the generic definition of "unlawful harassment" in the Code of Conduct.

IV.   VLS WAS AWARE THAT RH WITHDREW
      HER CODE OF CONDUCT COMPLAINT

VLS and Jefferson contend (Obj. at 15-17) that RH did not withdraw her complaint (1) because it was not a "formal" withdrawal, whatever "formal" means, and (2) because in her May 2011 deposition testimony RH claimed that she had not withdrawn it.[1]

As to the first contention, there is no concept in the Code of "formal" withdrawal and this is a notion invented by defendants just for the instant objection. The uncontested facts are that

---

[1] The withdrawal issue is significant, among other reasons, because VLS permitted all the witnesses who would *benefit* Vaughan's case (e.g., CS and Gutschenritter) not to testify at the hearing, but required RH to testify despite her withdrawal of her complaint and request not to be further involved.

- RH wrote on March 3, 2010 that "I do not think that I want to pursue this matter any further."

- RH on March 30, 2010 advised Jefferson of "my decision to no longer be directly involved."

- Jefferson in turn wrote on May 3, 2010 that "I know that you [RH] have since then dismissed the complaint."

- Jefferson advised the Committee on May 17 that "[RH] has since asked that she no longer participate directly in these proceedings."

- Jefferson on May 18 provided to Vaughan what she described as "a copy of the withdrawal of complaint by [RH]."

See principal memo at 12-13. Defendants cannot re-write history by inventing a concept of "formal" withdrawal and claiming that "informal" somehow does not count. In every way relating to the proceeding they acted as if RH withdrew it, they advised the Committee that she withdrew it, and they advised Vaughan that it was withdrawn. It was withdrawn, and Vaughan is entitled to a ruling establishing that fact as a matter of law.

Defendants' submission of RH's deposition testimony from *May 2011* – a full year after the events in question – is wholly irrelevant and should be ignored. The only relevant evidence is what VLS and Jefferson knew during the period of the disciplinary process, not what they can get their sympathetic[2] witness to say during leading examination in a self-serving deposition.

---

[2] As noted in her answers on oath to Requests to Admit Nos. 26 & 27 (Doc. 68-5 at 7), RH was represented at no cost to her by counsel arranged for her by VLS, and has a joint defense agreement with VLS and Jefferson.

Dated: July 22, 2011

                                          JOSHUA VAUGHAN,
                                          Plaintiff,

                                          /s/ W. E. Whittington
                                          W.E. Whittington

W. E. Whittington (Bar No. 000520396)
Whittington Law Associates, PLLC
35 South Main Street
Hanover, NH 03755
(603) 643-2755
ned@whittington-law.com

## CERTIFICATE OF SERVICE

      I hereby certify that on July 22, 2011, I served the foregoing pleading on the following counsel of record, by causing it to be filed electronically via the CM/ECF filing system, on the following counsel of record:

                            Karen McAndrew, Esq.
                            Sophie E. Zdatny, Esq.
                            Dinse, Knapp & McAndrew, P.C.
                            209 Battery St.
                            Burlington, VT 05401

                            kmcandrew@dinse.com
                            szdatney@dinse.com

                                          /s/ W. E. Whittington
                                          W.E. Whittington