JOSHUA VAUGHAN,                :
                              :
          Plaintiff,          :
                              :
                              :    Case No. 2:10-cv-276
     v.                       :
                              :
VERMONT LAW SCHOOL, INC., and :
SHIRLEY JEFFERSON,            :
                              :
          Defendants.         :

## MEMORANDUM and ORDER

Plaintiff Joshua Vaughan has brought this civil action

against defendants Vermont Law School ("VLS") and Shirley

Jefferson (VLS's Dean for Student Affairs and Diversity) for

damages resulting from Defendants' alleged mishandling of a

sexual assault complaint made against Vaughan by RH, one of his

classmates at VLS.  Vaughan's complaint currently contains a

claim against VLS and Jefferson for negligence and a claim

against VLS for breach of contract and FERPA obligations.[1]

Currently pending before the Court are a number of motions

filed by Vaughan: a motion for leave to amend his complaint and

join Church Engle & Associates, Inc. as a party, ECF No. 53; a

_____

[1] Vaughan had initially named RH as a Defendant as well, but
has since dismissed his claims against her.  Furthermore, the
Court granted VLS and Jefferson's motion for judgment on the
pleadings for failure to state a claim with regard to Vaughan's
claims for intentional infliction of emotional distress and
negligent infliction of emotional distress.  Feb. 9, 2011
Memorandum and Order, ECF No. 33.

motion to preclude retrial of whether RH consented to sexual intercourse, ECF No. 62; a motion to preserve the confidentiality of and seal excerpts of his deposition testimony which have been used by the Defense as an exhibit in its opposition to the motion to preclude retrial of the consent issue, ECF Nos. 62 & 63; a motion for partial summary judgment on several issues, ECF No. 69; an assented-to motion to extend the discovery schedule by forty-five days, ECF No. 71; and a second motion to extend the discovery schedule by an additional forty-five days, ECF No. 73. VLS and Jefferson have cross-moved for partial summary judgment on the same issues as Vaughan. ECF No. 74.

For the reasons that follow the motion for leave to amend is **granted in part** and **denied in part**. Vaughan may amend his complaint to include a Title IX claim, to revise his contract claim by excluding references to FERPA and by adding more specific allegations pertaining to VLS's alleged breach of its obligations under the Code of Conduct, and to include factual allegations learned of or confirmed during discovery. He may not, however, revive his intentional infliction of emotional distress claim against VLS and Jefferson, join Church Engle Associates, Inc. as a defendant in any of the claims, or use the term "rape" to describe RH's allegations against him. Vaughan's motions to preclude retrial of the consent issue, to preserve the confidentiality of and seal excerpts from his deposition

testimony, and for partial summary judgment are **denied**.

Defendants' cross-motion for partial summary judgment is **granted**.

Vaughan's motions to extend the discovery schedule are **granted.**

## Factual Background

Vaughan is a member of VLS's class of 2012.  On August 15, 2009, prior to the start of orientation for the 2009-10 academic year, he met RH at a social gathering.  Later that night, after both of them had consumed alcohol, they went to Vaughan's apartment and had sexual intercourse.  Vaughan claims the sex was consensual, while RH claims that she expressed to Vaughan that she did not want to have sexual relations with him.

RH did not report the incident until January 2010, at which point she filed a complaint with VLS after consulting with two VLS Student Ambassadors.  In early February 2010, Jefferson met with Vaughan regarding the complaint and asked him about the underlying events.  On February 3, 2010, pursuant to procedures set forth in the VLS Code of Conduct, Jefferson made a determination that it was more probable than not that Vaughan had violated the Code of Conduct.  After consulting with Vaughan to determine whether he wanted to proceed directly to a formal hearing or have the complaint investigated first, Jefferson appointed independent investigators from Church Engle & Associates, Inc. ("CEA") to investigate the complaint.  On March 30, 2010, RH sent Jefferson an email stating that she did not

want further involvement in the investigation or in any
subsequent hearing.

The investigators, Barbara Church and Keith Engle, submitted
a report on April 6, 2010 ("the Church-Engle report"), in which
they reported that RH expressed uncertainty about whether she
verbally said "no" and that, "assuming that RH' accounts are
accurate, [they could not] say that Mr. Vaughan understood that
RH did not want to have intercourse with him[.]"  ECF No. 7-2, 6.
The report also found that "given the amount of drinking that had
occurred, it is possible that RH was not sober enough to give
informed consent and that Mr. Vaughan was not able to understand
the gestures RH was making[.]"  *Id*.  The Report noted that under
the VLS Code of Conduct "[i]mpaired judgment because of the use
of alcohol or other drugs is not a defense to a charge of sexual
assault."  *Id*. at 7.  The report also made reference to behavior
by Vaughan toward other women described as "weird," "creepy,"
"inappropriate" and "sexual."  It described two occasions on
which Vaughan was alleged to have shown up intoxicated at the
apartments of female classmates.  The women alleged that Vaughan,
whom they had not invited, only left when they called other
classmates to convince him to leave.  The report also described
allegations that Vaughan was known to "hit on" women in an
aggressive manner and to try to pressure them into walking home
with him at night.  *Id*.

On April 16, 2010, after reviewing the Church-Engle report, Jefferson made another determination that there were reasonable grounds to believe that Vaughan had violated the Code of Conduct by committing sexual assault and by engaging in a pattern of behavior constituting sexual harassment. On April 23, she met with Vaughan and informed him that VLS would pursue both sexual assault and sexual harassment charges against him. However, she indicated that VLS would drop the sexual assault charge if he would waive his right to a formal hearing and admit to the sexual harassment offense.

Vaughan elected to go forward with a hearing, which was held on September 3, 2010. At the hearing, the panel indicated that Vaughan had not been given adequate notice of and opportunity to respond to the sexual harassment allegation and offered to suspend the hearing so that an investigation of that allegation could be performed. Vaughan elected to continue with the hearing. At the conclusion of the hearing, the panel found that both charges against Vaughan were "unfounded."

Vaughan alleges that VLS's handling of RH's complaint has negatively affected his educational experience in a number of ways. First, during the course of the investigation, VLS refused to release grade reports or a transcript to him. The grade reports and transcript were ultimately released after the hearing, on September 28, 2010. Vaughan states that, after his

experience during the 2009-10 academic year he wished to transfer to another law school for the 2010-11 academic year, but that the delay in the release of his transcript prevented him from completing transfer applications in a timely fashion. Furthermore, in January 2010, Vaughan registered for a section of VLS's "Legal Profession" course taught by Professor Robert Rachlin but was told he would not be allowed to take it because RH was also registered for that section. "Legal Profession" is a required course at VLS and Vaughan was given the option of taking the course with a different professor that semester or waiting to take the course during his third year.

Vaughan also alleges that "RH, [] Jefferson, VLS, the Student Ambassadors and/or others acting with their approval" disclosed information from RH's complaint to other people in the VLS community. Compl. ¶ 46, ECF No. 1. He asserts that an erroneous belief that he sexually assaulted RH has become prevalent in the VLS community and that, as a result of this, his law school experience has suffered in a number of ways. For example, he alleges that as a result of the rumors, he has been barred from entering Crossroads Bar & Grill for official VLS functions and informal social gatherings and that he has been afraid to speak out in classes. He also complains that, because of the rumors, many students have declined to socialize with him

and that one of the Student Ambassadors, CG, physically assaulted him.

Finally, Vaughan asserts that his involvement in the investigation and its aftermath have caused him emotional distress and stomach ulcers. He also believes that his grades suffered during the Spring 2010 semester as a result of the time he was required to spend responding to RH's complaint and the resulting stress.

**Discussion**

I. Motion for Leave to Amend

A court should freely give leave to amend "when justice so requires." Fed. R. Civ. P. 15(a); *see Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962). A Rule 15(a) motion "should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 603 (2d Cir. 2005) (quoting *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987)). "'Keeping in mind the principle that leave to amend should be freely given, it is the non-moving party's burden to demonstrate' that leave to amend should be denied." *Arroyo v. Milton Acad.*, No. 5:10-CV-117, 2011 U.S. Dist. LEXIS 2588, at *3 (D. Vt. Jan. 10, 2011) (quoting *Roller Bearing Co. of Am., Inc. v. Am. Software, Inc.*, 570 F.

Supp. 2d 376, 385 (D. Conn. 2008)). "[T]he grant or denial of an opportunity to amend is within the discretion of the District Court." *Foman*, 371 U.S. at 182.

Vaughan seeks to amend his complaint in a number of ways. First, he wishes to add a new claim against VLS under Title IX of the Educational Amendments of 1972. Second, he seeks to join CEA as an additional defendant in his negligence claim. He also wishes to revive his previously dismissed IIED claim based on new facts learned during discovery, and to join CEA as a defendant in that claim. Furthermore, he wishes to amend his breach of contract claim against VLS by removing references to FERPA and by adding more specific allegations pertaining to VLS's alleged breach of its obligations under the Code of Conduct. Finally, he seeks to add to his complaint various factual allegations learned of or confirmed during discovery. Each of the proposed amendments is addressed in turn.

A) Title IX Claim

Vaughan seeks to add to his complaint a claim against VLS under Title IX of the Educational Amendments of 1972. 20 U.S.C. §§ 1681-88 (1988). Title IX provides, in relevant part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. §

1681(a).  Title IX is enforceable through an implied right of

action.  *Franklin v. Gwinnett County Pub. Sch.,* 503 U.S. 60, 65

(1992); *Cannon v. Univ. of Chicago*, 441 U.S. 677, 60 L. Ed. 2d

560, 99 S. Ct. 1946 (1979).

In their opposition to the motion to amend, VLS and

Jefferson argue that Vaughan should not be granted leave to add a

Title IX claim to his complaint on the ground that such an

amendment would be futile.  "An amendment to a pleading will be

futile if a proposed claim could not withstand a motion to

dismiss pursuant to Rule 12(b)(6)."  *Dougherty v. Town of N.*

*Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)

(citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d

Cir. 1991)).  Therefore, a claim a plaintiff seeks to add to his

complaint via amendment will be found to be futile if it does not

"contain sufficient factual matter, accepted as true, to 'state a

claim for relief that is plausible on its face.'"  *Ashcroft v.*

*Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic v.*

*Twombly*, 550 U.S. 544, 570 (2007)).

"To prove a prima facie case under Title IX, Plaintiff must

simply show that he was excluded from participation, denied the

benefits of, or subjected to discrimination in an educational

program, that the program receives federal assistance, and that

the exclusion was on the basis of his sex."  *Bucklen v.*

*Rensselaer Polytechnic Inst.*, 166 F. Supp. 2d 721, 726 (N.D.N.Y

2001); *see also Murray v. New York Univ. College of Dentistry*,
No. 93 Civ. 8771, 1994 U.S. Dist. LEXIS 13880, at *13 (S.D.N.Y.
Sept. 29, 1994).  In his proposed amended complaint, Vaughan
alleges that VLS, in its handling of RH's complaint, "was
motivated by Vaughan's gender or sex in that VLS favored and gave
preferential treatment to the female complainant and disfavored,
discredited and gave disadvantageous treatment to Vaughan as a
male."  Am. Compl. ¶ 91, ECF No. 53-1.  Specifically, Vaughan
asserts, *inter alia*, that VLS "accepted RH's complaint as having
'reasonable cause' without any investigation of it at all, but
refused to accept or even consider Vaughan's complaint [of
assault] against CG which was intertwined with the RH complaint";
"gave RH the Church Engle Report as soon as they received it on
April 6, but refused to give it to Vaughan until after he made
his decision to have a hearing on May 14"; "prevented Vaughan,
but not RH, from taking courses where the two of them were both
registered"; and "effectively barred Vaughan from most public
socializing by encouraging the Student Ambassadors to have
Vaughan barred from the Crossroads Bar and Grill."  *Id*. at ¶ 90.
He also alleges that VLS took an unreasonable amount of time to
complete its investigation and disciplinary hearing process,
during which he was not given access to his transcript and
thereby prevented from completing transfer applications for other
law schools.  *Id*.

Because the amended complaint "contain[s] sufficient factual matter, accepted as true, to state a claim for relief [under Title IX] that is plausible on its face," the Court cannot conclude that amendment would be futile. *Iqbal*, 129 S. Ct. at 1949 (internal quotation omitted). There is no dispute that VLS is a Title IX funding recipient. Furthermore, Vaughan has made factual allegations that, if credited as true, suggest that he was "denied the benefits of, [and] subjected to discrimination in an educational program" -- for example when he was disallowed from taking a class for which RH had also registered and prevented from accessing his transcript during the period when he sought to complete transfer applications. Finally, Vaughan has leveled allegations that may support an inference that his disparate treatment was based on gender, such as that Dean Jefferson "accepted RH's complaint as having 'reasonable cause' without any investigation . . . , but refused to accept or even consider Vaughan's complaint against CG." Am. Compl. ¶ 90.

Rather than addressing the proposed amendment using the prima facie case for a Title IX claim articulated in *Bucklen* and *Murray*, VLS and Jefferson suggest that Vaughan's Title IX claim should be analyzed under a Title VII framework. Opp'n to Mot. to Amend 12-13, ECF No. 64 (citing *Johnson v. Board of Regents,* 106 F. Supp. 2d 1362, 1367 (S. D. Ga.. 2000) ("[T]he standard for finding gender discrimination under Title IX is the same as Title

VII's standard for racial discrimination."); *Blundell v. Wake Forest University Baptist Med. Ctr.*, No. 1:03-CV-998, 2006 U.S. Dist. LEXIS 11713, at *31 (M.D.N.C. March 15, 2006) ("In many discrimination cases, because there are fewer cases concerning Title IX, courts have applied the judicial interpretations of Title VII to Title IX claims."). They argue that Vaughan therefore must show that: (1) he is within a protected class; (2) he was performing at a level that met the school's legitimate expectations; (3) he suffered an adverse educational action; and (4) others not in the protected class were treated more favorably. *Id.* (citing *Blundell*, 2006 U.S. Dist. LEXIS 11713, at *32; *Darian v. University of Mass.,* 980 F.Supp. 77, 91 (D. Mass. 1997)).[2]

---

[2] Curiously, rather than defending the viability of his claim by relying either on this set of elements or the elements articulated in *Bucklen* and *Murray*, Vaughan, in his reply brief, asserts that his Title IX claim is not futile because he has alleged factual matter sufficient to make out the four elements necessary for a plaintiff to prevail on a claim that an educational institution was deliberately indifferent to student on student sexual harassment:

> (1) defendant is a Title IX funding recipient;(2) an appropriate person has actual knowledge of the discrimination or harassment the plaintiff alleges occurred; (3) the funding recipient has acted with deliberate indifference to known acts of harassment; and (4) the discrimination is so severe, pervasive and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit."

Reply in Supp. of Mot. to Amend 8-12, ECF No. 68 (citing *McGrath v. Dominican College of Blauvelt, New York*, 672 F. Supp. 2d 477, 486 (S.D.N.Y. 2009); *Williams v. Board of Regents of the*

Even assessing his Title IX claim using this set of elements, the Court cannot conclude that the proposed amendment would be futile. Contrary to Defendants' unsupported assertion that "[w]hite male law students" are not members of a protected class, there is no question that males alleging gender discrimination may bring suit under Title IX. *See, e.g., Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994) (reversing dismissal of Title IX claim brought by male student alleging he was victim of gender discrimination during disciplinary proceedings) (overruled on other grounds). Moreover, there is no dispute that Vaughan has performed at a level meeting VLS's legitimate expectations. Finally, he has alleged both that he has suffered adverse educational actions and that female students, in particular RH, were treated more favorably than him -- for example when he was disallowed from taking Professor Rachlin's "Legal Profession" course, after the disciplinary charges against him were dismissed, because RH had also registered for the course.

---

*University System of Georgia*, 477 F. 3d 1282, 1293 (11th Cir. 2007). Vaughan's sole reliance on law articulated in cases of deliberate indifference to student on student harassment is somewhat puzzling since his proposed amended complaint makes clear that the gravamen of his Title IX complaint is that Dean Jefferson "was the principal person carrying out the actions which were discriminatory and/or in violation of the regulations." Am. Compl. ¶ 92.

VLS and Jefferson also argue that the entire motion to amend should be denied on the grounds of undue prejudice because the proposed amendments would require them "to expend significant additional resources to conduct discovery and prepare for trial [and] significantly delay the resolution of the dispute." Opp'n to Mot. to Amend 14 (quoting *Block v. First Blood Associates,* 968 F.2d 344, 350 (2d Cir. 1993)). Because the factual basis for the Title IX claim appears already to have been thoroughly explored through discovery, allowing Vaughan to proceed with this claim would not unduly prejudice Defendants.

Because the Court cannot conclude that Vaughan's Title IX claim would be futile and because addition of the claim would not cause undue prejudice, the motion to amend is **granted** with respect to this claim.

### B) Negligence Claim Against CEA

Vaughan seeks to join CEA, which is not currently a party in this lawsuit, as a defendant in his negligence claim. He alleges that CEA owed him a duty to conduct its investigation and write its investigative report in a reasonable manner consistent with the standard of care applicable for professional investigators. He argues that CEA breached this duty by accepting an investigative assignment for which it was not qualified; by failing to thoroughly investigate or to give Vaughan an opportunity to respond to certain factual allegations that

appeared in its investigative report, namely excessive alcohol consumption by Vaughan and RH and a pattern of sexual harassment by Vaughan; by continuing its investigation after learning of inconsistencies in RH's account of the underlying incident; and by misrepresenting witness statements in a manner that concealed inconsistencies in RH's statements and exaggerated the amount of alcohol consumed by RH and Vaughan. Am. Compl. ¶¶ 90, 99. Vaughan alleges that he "suffered damages proximately caused by . . . Church Engle's negligence and wrongful actions," *id*. at ¶ 101, but does not specify exactly what these damages were or identify any theory of causation.

In order to make out a common law negligence claim, a plaintiff must prove four elements:

> (1) the defendant must owe a legal duty to conform to a certain standard of conduct so as to protect the plaintiff from an unreasonable risk of harm; (2) the defendant must have committed a breach of this duty by failing to conform to the standard of conduct required; (3) the defendant's conduct must be the proximate cause of the plaintiff's injury; and (4) the plaintiff must have suffered actual loss or damage.

*Langle v. Kurkul*, 146 Vt. 513, 517 (1986) (citing W. Prosser and W. Keeton, The Law of Torts § 30, at 164-65 (5th ed. 1984)). VLS and Jefferson argue that amendment of Vaughan's complaint to include a negligence claim against CEA would be futile because "CEA owed no duty to Plaintiff" and because "no actions taken by

CEA proximately caused any injury to Plaintiff, who was not disciplined."  Opp'n to Mot. to Amend 13.

Although the question of whether CEA owed a legal duty to Vaughan is more complex than Defendants make it out to be,[3] the Court agrees that the negligence claim against CEA could not survive a motion to dismiss because Vaughan has failed to allege facts supporting the causation and damages elements.  It is undisputed that the investigative report CEA submitted to VLS did not conclude that Vaughan had sexually assaulted RH.  In fact, in his original complaint, Vaughan characterized the report as "exculpatory."  Compl. ¶ 58.  Furthermore, although the contents of the report may have affected VLS and Jefferson's decision to

---

[3] "Whether there is a legal duty is primarily a question of law, dependent upon a variety of relevant factors . . . of which foreseeability of the risk is a primary consideration." *Langle v. Kurkul*, 510 A.2d 1301, 1305 (Vt. 1986) (internal quotation omitted).  "Ultimately, whether a duty exists is a question of fairness that depends on, among other factors, the relationship of the parties, the nature of the risk, and the public interest at stake." *Hamill v. Pawtucket Mut. Ins. Co.*, 2005 VT 133, ¶ 6, 892 A.2d 226, 228 (2005).  The Vermont Supreme Court has not specifically addressed the question of whether private investigators owe a legal duty to the subjects of their investigations.  However, other jurisdictions have suggested that such a duty may exist. *See Remsburg v. Docusearch, Inc.*, 816 A.2d 1001, 1007 (N.H. 2003) ("[I]f a private investigator['s] . . . disclosure of information to a client creates a foreseeable risk of criminal misconduct against the third person whose information was disclosed, the investigator owes a duty to exercise reasonable care not to subject the third person to an unreasonable risk of harm.").

move forward with a disciplinary hearing on charges of sexual
assault and sexual harassment, Vaughan was found not to be
responsible for either of these two charges at the conclusion of
the hearing.

In his reply brief, Vaughan attempts to rely on *Prive v. Vt.
Asbestos Group*, 2010 VT 2, 992 A.2d 1035 (2010), for the
proposition that CEA may be held liable for VLS's tortious
behavior because it was acting as the law school's agent.  Reply
in Supp. of Mot. to Amend 9.  While it is true that an agent may
be held liable for the tortious behavior of its principal where
the agent "participates actively in the commission of [the]
tortious act[,]" a plaintiff seeking to recover under such a
theory must still prove that the agent's actions were a proximate
cause of his injuries.  *Prive*, 992 A.2d at 1041.

Although Vaughan includes in his proposed amended complaint
a boilerplate assertion that he "suffered damages proximately
caused by . . . Church Engle's negligence and wrongful actions,"
Am. Compl. ¶ 101, he fails to suggest any plausible causal link
between CEA's actions and any damages he has suffered.  The
amended complaint does not even clearly identify which damages
CEA's behavior allegedly caused.

"[A] plaintiff's obligation to provide the grounds of his
entitlement to relief requires more than labels and conclusions,
and a formulaic recitation of the elements of a cause of action."

*Twombly*, 550 U.S. at 554 (internal quotation omitted). Because Vaughan has not alleged facts to support the proximate cause or damages elements of a negligence claim against CEA, allowing him to amend his complaint to include such a claim would be futile.

Even if Vaughan's proposed amended complaint did include a sufficiently pled negligence claim against CEA, the Court would deny leave to amend on the grounds of undue prejudice. Discovery is currently scheduled to conclude by September 14, 2011. VLS and Jefferson have made a representation that "[e]xtensive discovery has [already] been conducted in this case," including depositions of the key witnesses and parties. Opp'n to Mot. to Amend 15. Allowing Vaughan to amend his complaint to join a new defendant to this litigation would require extension of the discovery schedule -- at the very least to allow CEA to conduct depositions -- and thereby increase the costs of the litigation and significantly delay resolution of the case. *See Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008) ("In gauging prejudice, [courts] consider, among other factors, whether an amendment would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute." (internal quotation omitted)). The motion to amend the complaint is **denied** with respect to Vaughan's request to bring a negligence claim against CEA.

<u>C) IIED Claim Against VLS and Jefferson</u>

Vaughan seeks to revive his IIED claim against VLS and Jefferson, which the Court dismissed on VLS and Jefferson's motion for judgment on the pleadings for failure to state a claim in its Memorandum and Order of February 9, 2011. ECF No. 33. He asserts that his "repleading of the IIED claim [is] based on substantial new facts uncovered or confirmed during discovery." Mot. to Amend 2.

The newly pled allegations Vaughan relies on to support the IIED claim include: (1) when Defendants learned that the date on which RH alleged the sexual assault took place was prior to the start of orientation, they encouraged her to amend her complaint to reflect that the incident had occurred after the start of orientation; (2) Defendants "carried out their investigation in a manner designed to establish Plaintiff's guilt rather than in a fair and impartial manner"; (3) Defendants continued their investigation after RH "changed her key testimony" to reflect that she had not verbally told Vaughan "no"; (4) Defendants continued their investigation after RH "withdrew" her complaint by indicating that she did not want further involvement in the process; (5) Defendants investigated vague allegations of a "pattern of sexual harassment" made by witnesses interviewed during the investigation even though RH's initial complaint had been limited to the alleged sexual assault; (6) Defendants

threatened Vaughan with what they knew to be an unsupportable sexual assault charge in an attempt to force him to admit what they knew to be an unsupportable sexual harassment allegation; (7) Defendants attempted to pressure Vaughan into waiving his right to a hearing; (8) Defendants purposefully delayed the hearing in order to "increase Vaughan's damage and to attempt to force him to . . . accept the 'plea bargain' offered by Jefferson"; (9) Defendants purposefully withheld Vaughan's transcript in order to prevent him from transferring; and (10) Defendants precluded Vaughan from taking a course for which he registered after the charges against him were found to be without merit. Am. Compl. ¶ 103.

VLS and Jefferson, relying on *Fellheimer v. Middlebury College*, 869 F. Supp. 238, 247 (D. Vt. 1994), argue that "even if assumed to be true for the purpose of determining whether the re-assertion of this claim is futile, [these allegations] do not form the basis for an IIED claim." Opp'n to Mot. to Amend. 13. In *Fellheimer*, Judge Parker held that "[a] college's decision, when confronted with a female student's accusation of rape, to confront the male student with the charges, hold a hearing, and support the findings of the initial tribunal on appeal, even where various procedural errors are alleged, cannot form the basis of an IIED claim." He noted that, in that case, "the conduct alleged on the part of the College [was] neither extreme

nor outrageous." *Id*.

Vaughan argues that, based on the facts added to his proposed amended complaint as a result of discovery,[4] he has adequately alleged "extreme and outrageous" conduct on the part of Defendants. Reply in Support of Mot. to Amend 10, ECF No. 68 (citing *Crump v. P & C Food Mkts.*, 576 A.2d 441 (Vt. 1990) (upholding denial of defendant's motion for judgment notwithstanding the verdict on IIED claim where 18-year employee was terminated without prior notice, in three- to four-hour meeting during which he did not feel free to leave and was badgered to sign a statement); *McCormick v. Dresdale*, No. 09-474 S, 2010 U.S. Dist. LEXIS 41848, at *2 (D.R.I. 2010) (denying motion to dismiss IIED claim against university where student accused of rape was forced to withdraw from school after administrators failed to adequately investigate the complaint)). Vaughan asserts that his allegations are "on a par at least as strong as the conduct" in *Crump* and *McCormick*. However both cases are clearly distinguishable. Whereas the plaintiffs in those cases were ultimately fired or forced to withdraw from school, Vaughan was not forced to leave VLS and the disciplinary

---

[4] In fact, much of what Vaughan characterizes as "substantial new facts learned of or confirmed during discovery," Mot. to Amend 2, is information he already possessed prior to discovery which he has re-framed using argumentative and often conclusory language.

process of which he complains resulted in a determination that the allegations against him were unfounded.

To prevail on IIED claim, a plaintiff must show that the defendants' conduct was "so outrageous as to surpass all possible bounds of decency, and . . . be regarded as atrocious, and utterly intolerable in a civilized community." *Gallipo v. City of Rutland*, 656 A.2d 635, 643 (Vt. 1994) (internal quotation omitted). Accepted as true, Vaughan's allegations of deficiencies in a process which did not result in any disciplinary action against him, let alone his expulsion from school, do not come close to rising to this level.

Because the proposed amended complaint fails to allege facts sufficient to make out the element of extreme and outrageous conduct, the motion to amend is **denied** with respect to the IIED claim against VLS and Jefferson.

D) IIED Claim Against CEA

Vaughan also seeks to bring an IIED claim against CEA. In support of the claim, he alleges that, in composing its investigative report, CEA "altered statements to Vaughan's detriment, [] deleted information to Vaughan's detriment, and omitted significant exculpatory information[.]" Am. Compl. ¶ 103.

As discussed *supra*, joining CEA as a defendant at this late stage of the discovery schedule would unduly prejudice the

current parties by increasing the costs of the litigation and significantly delaying resolution of the case. Furthermore, amending the complaint to include an IIED claim against CEA would be futile.

Accepting the factual matter alleged in the proposed amended complaint as true, Vaughan has not alleged behavior on the part of CEA that rises to the level of extreme or outrageous conduct. Allegations of questionable editorial decisions in a report that ultimately states that there was insufficient evidence to conclude that Vaughan committed a sexual assault do not amount to a plausible claim that CEA engaged in "outrageous conduct, done intentionally or with reckless disregard of the probability of causing emotional distress, resulting in the suffering of extreme emotion distress, actually or proximately caused by the outrageous conduct." *Crump,* 576 A.2d at 448; *see Gallipo v. City of Rutland*, 656 A.2d 635, 643 (Vt. 1994) (To prevail on IIED claim, plaintiff must show that that defendants' conduct was "so outrageous as to surpass all possible bounds of decency, and . . . be regarded as atrocious, and utterly intolerable in a civilized community." (internal quotation omitted)).

Because allowing Vaughan to add an IIED claim against CEA to his complaint would be futile and unduly prejudicial, the motion to amend is **denied** with respect to this claim.

### E) Breach of Contract Claim

Vaughan seeks to amend his claim against VLS for breach of contract and FERPA obligations by removing references to FERPA and by adding more specific allegations pertaining to VLS's alleged breach of its obligations under the Code of Conduct. Defendants do not oppose removal of references to FERPA but argue that, because Vaughan's contract claim based on the Code of Conduct is already before the court, "Plaintiff does not need to amend his complaint to include this expanded contract claim." Opp'n to Mot. to Amend 14. VLS does not appear to allege that it will suffer any prejudice if Vaughan is allowed to add more detailed allegations to his contract claim. Because no undue prejudice will result, and because the amendment will be helpful in fleshing out the exact nature of the contract claim, the motion to amend is **granted** with respect to the proposed changes to the contract claim.

### F) Addition of New Factual Allegations

Vaughan seeks to add numerous factual allegations, which he represents he has learned of or confirmed during discovery, to his complaint. VLS and Jefferson oppose these additions on the ground that Vaughan is making them in bad faith. In particular, VLS and Jefferson object to the following allegations: "Vaughan was falsely accused of rape," Am. Compl. ¶ 2; RH "changed her key testimony" and "recanted her prior claims," Am. Compl. ¶¶ 3, 41;

"CEA was not competent to handle the investigation," Am. Compl.
¶ 3; Defendants "changed their theory" in the middle of the
investigation and sought "to demonstrate that [RH] was too
intoxicated to consent and the plaintiff was too intoxicated to
discern consent" and "secretly investigated plaintiff for a
'pattern of sexual harassment,'" Am. Compl. ¶ 3; and CG had a
"personal agenda" and urged RH to report a "rape." Am. Compl. ¶
50. Defendants assert that Vaughan's bad faith is evident
because these allegations "are contrary to and unsupported by the
depositions or document productions[.]" Opp'n to Mot. to Amend
11.

Defendants object to Vaughan's use of the term "rape" in the
amended complaint because, during her deposition, RH stated that
she was alleging that Vaughan "sexually assaulted" her but was
not alleging that he "forcibly raped" her. RH Dep. 34-36, ECF
No. 64-1. They argue that "[t]he frequent use of the term 'rape'
rather than 'sexual assault,' in the proposed amended complaint
is not only inaccurate but it can only be intended to
sensationalize the nature of RH's complaint." Opp'n to Mot. to
Amend 5. The Court agrees that, in light of RH's deposition
testimony regarding the nature of her allegations, Vaughan's
attempt to amend his complaint to use the term "rape" instead of
"sexual assault" (the term he used in his original complaint) is
motivated by a desire to use inflammatory language and not by a

good faith effort to add newly discovered facts to his complaint.[5]

With regard to the other factual allegations and characterizations to which Defendants' object, the Court has reviewed the relevant discovery materials and determined that Defendants have not established that these allegations and characterizations are so lacking in support that they demonstrate bad faith. *See Arroyo*, 2011 U.S. Dist. LEXIS 2588, at *3 ("Keeping in mind the principle that leave to amend should be freely given, it is the non-moving party's burden to demonstrate that' leave to amend should be denied."). For example, although Defendants may not agree with Vaughan's characterization of alleged deviations in RH's account of the incident as "changes in key testimony," reasonable minds may differ on the question of what testimony was "key" in her complaint. Similarly, Vaughan's assessments of CEA's competence, of Defendant's apparent intentions during the investigation, and of CG's motivations are not so lacking in factual basis that they are demonstrably false.

Defendants should and will have opportunities to contest the

_____

[5] Although Vaughan asserts that "'rape' is another term for sexual assault," Reply in Support of Mot. to Amend 3, the two terms have different connotations. *See Black's Law Dictionary*, 110, 1267 (7th ed. 1999) (defining "rape" as "unlawful sexual activity (esp. intercourse) with a person (usu. a female) without consent and usu. by force or threat of injury" and "sexual assault" as "sexual intercourse with another person without that person's consent . . . [or] offensive sexual contact with another person, *exclusive of rape*" (emphasis added)).

factual allegations made by Plaintiff during the course of this litigation.  However, where there is not sufficient evidence to show that particular allegations have been made in bad faith, Defendants cannot prevent these allegations from being included in the Plaintiff's pleadings merely by disputing them.  Vaughan's motion to amend his complaint by adding factual allegations is **denied** with regard to his use of the term "rape," rather than sexual assault, to describe RH's allegations against him.  The motion is **granted** with regard to the other factual allegations he seeks to add to his complaint.

## II. Motion to Preclude Re-trial of Whether RH Consented

Vaughan has asked the Court to "preclude 're-trial' of the issue of whether RH consented to sex, and rule that new evidence on that issue is irrelevant and may not be explored on discovery."  Mot. to Preclude 1.  He argues that under none of his claims is "RH's actual consent, or whether a sexual assault actually occurred[] relevant."  *Id*. at 2.  Instead, he asserts "*the* relevant fact issues will be what information VLS and Jefferson had . . . and how they acted based on the information they had[.]"  *Id*. (emphasis added).

Vaughan's argument appears to confuse the question of whether a factual issue is relevant with the question of whether it is an ultimate issue.  Although RH's consent may not be an

ultimate issue in this case, it is clearly relevant to each of Vaughan's claims.

"'Relevant evidence' means evidence having *any tendency* to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401 (emphasis added). Vaughan's claims turn on the reasonableness of Defendants' actions in investigating RH's allegations of sexual assault, and in particular their decisions to pursue the disciplinary process as far as they did. There can be no question that the truthfulness of RH's complaint bears heavily on the issue of whether VLS and Jefferson acted reasonably during the course of the process. If RH's allegation that she was sexually assaulted is true, that fact has some tendency to make it more probable that Defendants acted reasonably in commencing and pursuing their investigation. Put slightly differently, while Vaughan is correct that "what information VLS and Jefferson had . . . and how they acted based on the information" are key issues in the case, the truthfulness of RH's complaint will help the fact finder to make determinations with regard to these key issues.

Vaughan's assertion that whether RH was actually sexually assaulted is not relevant to his claims is further belied by the fact that he repeatedly asserts in his own complaint that the

allegations of sexual assault she made against him were false and
that she changed her account of the incident during the course of
the investigation.  *See* Compl. ¶¶ 2, 3, 13, 18.  As a logical
matter, if Vaughan believes that the falsity of RH's sexual
assault complaint is relevant -- as his repeated inclusion of
this factual allegation in his complaint would seem to suggest --
he cannot also claim that whether she was in fact sexually
assaulted is not relevant.  Similarly, if he asserts that it is
an important fact that RH made certain changes to her account of
the incident during the investigation, then he is obviously
putting the truthfulness of that account at issue.

Because whether or not RH consented is relevant to Vaughan's
claims his motion to preclude "re-trial" of this issue and for a
ruling that new evidence on that issue is irrelevant and may not
be explored on discovery is **denied.**

III. Motions to Preserve Confidentiality of and Seal Deposition
Excerpt

Vaughan has moved to maintain the confidentiality of and to
seal excerpts from his deposition, which he has designated as
confidential pursuant to the parties' stipulated protective
order.  Mot. to Maintain Confidentiality, ECF No. 62; Mot. to
Seal, ECF No. 63.  Defendants have appended these excerpts as an
exhibit to their opposition to the motion to preclude re-trial of
the consent issue, and Vaughan has appended them as an exhibit to
his motion to maintain confidentiality.  The versions of the

deposition testimony filed as exhibits have been redacted such that individuals who are not parties to this litigation are referred to by their initials.

In the Deposition testimony in question, Vaughan recounts details of his sexual encounter with RH.  Defendants point out that this encounter was also described in the same level of detail in the Church-Engle Report, which Vaughan previously opposed sealing in the interest of maintaining "an open court process."  *See* Ex. B to Mot. for J. on Pleadings, ECF No. 7-2; Pl.'s Objection to Motion to File Exhibit Under Seal 2, ECF No. 13.  Agreeing with Vaughan's arguments regarding the importance of an open court process, the Court denied Defendants' motion to seal the Church-Engle Report.  *See* Feb. 4, 2011 Order Denying Mot. to Seal, ECF No. 32.  A version of that report, redacted to refer to non-parties only by their initials, is currently a publicly available document in this case.

Consistent with the Court's prior order denying the motion to seal the Church-Engle Report, Vaughan's motions to maintain the confidentiality of and to seal the redacted excerpts from his deposition is **denied**.

IV. Motion for Partial Summary Judgment

Vaughan has moved for partial summary judgment on four issues on which he asserts that "there is no genuine dispute as to any material fact and [that he] is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). These issues are: (1) that VLS had no authority to discipline him for pre-matriculation conduct and, in particular, for his sexual encounter with RH before the start of orientation; (2) that VLS had no authority to discipline him for off-campus conduct and, in particular, for dropping by private apartments of classmates; (3) that VLS had no authority to discipline him for unidentified statements claimed to be "creepy," "weird," "inappropriate" or "sexual"; and (4) that RH withdrew her complaint against Vaughan and VLS was fully aware of the withdrawal. VLS and Jefferson oppose the motion, arguing that they are actually entitled to partial summary judgment on each of these issues

Pursuant to Rule 56(a), "[a] party may move for summary judgment, identifying each claim or defense — *or the part of each claim or defense* — on which summary judgment is sought." (emphasis added). Summary judgment is "'warranted upon a showing that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 455 (2d Cir. 2007) (quoting *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004)); Fed. R. Civ. P. 56(c). "In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the

moving party." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 579 (2d Cir. 2006).

## A) Authority of VLS to Discipline Vaughan

The parties agree that the relationship between Vaughan and VLS is contractual in nature. *See Merrow v. Goldberg*, 672 F.Supp. 766, 774 (D. Vt. 1987); *Fellheimer*, 869 F.Supp. at 242. "The terms of the contract [between a school and its students] are contained in the brochures, course offering bulletins, and other official statements, policies and publications of the institution." *Id.* In this case, the most relevant contractual terms are contained in VLS's Code of Conduct. Article 1 of the Code of Conduct includes the following language:

> This code governs all matters of conduct not covered by the Vermont Law School Honor Code. It applies to the conduct of students of Vermont Law School with regard to their actions in connection with the application and admissions process, educational activities, career services, employment, or other law school-related activities, when those actions occur on VLS property or in the use of VLS facilities (including the computer network and telephone and e-mail systems). This Code also applies when those actions occur off campus in connection with events sponsored by VLS or VLS-approved organizations, or in connection with official business undertaken for VLS, or in other circumstances where an action could have a significant impact on the educational or employment environment or the reputation or integrity of VLS or could pose a threat to the safety or other interests of VLS or members of the VLS community. . . .
> A student is held to have notice of this Code of Conduct by enrolling in a Vermont Law

School class.

Code of Conduct, Ex. 1 to Mot. for Partial Summ. J. 2, ECF No. 69-2.

Vaughan argues that VLS had no authority to discipline him for his alleged sexual assault of RH because the encounter in question occurred before the start of VLS's orientation week. According to Dean Jefferson's deposition, students were not issued hard copies of the Code of Conduct until orientation. Jefferson Dep. 26, ECF No. 69-3. Accordingly, Vaughan argues, he was not on notice of the contents of the Code of Conduct prior to orientation and was therefore unable to come to the "meeting of the minds" necessary for the contract to bind him. Mot. for Partial Summ. J. 4-5. Furthermore, he asserts the Code of Conduct did not apply to him by its own terms because he was not yet a "student" and because he had not yet enrolled in a VLS class.

Defendants dispute these assertions. They argue that Vaughan was on notice of the contents of the Code of Conduct well before orientation week because it was made available to him on VLS's website during the spring and summer of 2009. *See* Jefferson Dep. 199, ECF No. 74-2. Furthermore, they point out that Vaughan testified at his deposition that he arrived at VLS with the assumption that sexual assault would be a violation of any school's policy. *See* Vaughan Dep. 28-29, ECF No. 74-5.

Moreover, they argue that, regardless of when Vaughan actually accepted the contract terms embodied in the Code of Conduct, those term explicitly allow VLS to discipline members of the VLS community for conduct that occurs even before they become students.  For example, by its own terms, the Code "applies to the conduct of students of Vermont Law School with regard to their actions in connection with the application and admissions process," which occur long before students arrive on campus. Code of Conduct 2; *see also North v. West Virginia Bd. of Regents,* 332 S.E.2d 141, 144-45 (W. Va. 1985) (holding that disciplinary rules applied to conduct of individual in applying for admission even though he was not yet a student when actions took place).

Defendants' argument is persuasive.  Although Vaughan alleges that he had not yet entered into the contract embodied in the Code of Conduct at the time that the alleged sexual assault occurred, he does not dispute that, once he began classes in the fall of 2009, he accepted the contract.  Under the unambiguous terms of that contract, VLS was entitled to investigate any action that "could have a significant impact on the educational or employment environment or the reputation or integrity of VLS or could pose a threat to the safety or other interests of VLS or members of the VLS community."  Code of Conduct 2.  The Code of Conduct contains no language suggesting any limitation that

34

behavior subject to VLS's disciplinary authority must have taken place after enrollment, and the fact that the Code explicitly covers "actions in connection with the application and admissions process" makes clear that no such limitation exists.

An alleged sexual assault of one soon-to-be student by another, only days before the start of the semester, is without question an action that "could have a significant impact on the educational . . . environment" and "could pose a threat to the safety or other interests of VLS or members of the VLS community." Accordingly, while the Court does not decide the disputed fact question of whether RH's allegations are true, Defendants are entitled to a ruling that VLS has the authority to pursue disciplinary charges against a student accused of committing a sexual assault prior to orientation.

Vaughan next argues that VLS had no authority to discipline him for the alleged off-campus conduct that constituted the basis for the sexual harassment charge brought against him after CEA submitted its report to VLS. This alleged conduct included showing up intoxicated at the apartments of two female VLS students, ignoring social cues that they wanted him to leave and departing only when they called on other students to convince him to leave. The Church-Engle Report also noted that several students reported that Vaughan made statements to female classmates described as "creepy," "weird," "inappropriate,"

and/or "sexual." The reports included allegations that Vaughan
aggressively "hit on" female classmates and tried to pressure
some of them into walking home with him at night.

VLS's Policy Against Harassment, Sexual Harassment and
Discrimination, which is part of the Code of Conduct, prohibits
"verbal or physical conduct that on the basis of a protected
characteristic has the purpose or effect, from the point of view
of a reasonable person possessing that characteristic, either of
interfering with an individual's . . . educational performance or
of creating an intimidating, hostile or offensive . . .
educational environment." Code of Conduct 9. The policy
specifies that "sexual harassment includes conduct that a
reasonable person would judge to be unwelcome sexual advances[.]"
*Id*. Mirroring the introductory language that appears earlier in
the Code of Conduct, the policy indicates that it "applies when
[the] actions occur *off campus* . . . in [] circumstances where an
action could have a significant impact on the educational or
employment environment or the reputation or integrity of VLS, or
could pose a threat to the safety or other interests of VLS or
members of the VLS community." *Id*. (emphasis added).

The Court makes no judgment as to the disputed factual
question of whether the sexual harassment allegations leveled
against Vaughan are true. However, in light of the contract
terms embodied in the Code of Conduct, Defendants are entitled to

36

a ruling that VLS has the authority to pursue disciplinary charges against a student for allegations of off campus sexual harassment, where those allegations include "unwelcome sexual advances" that "could have a significant impact on the educational . . . environment" and "could pose a threat to the safety or other interests of VLS or members of the VLS community." *Id*.

### B) Whether RH "Withdrew" Her Sexual Assault Complaint

In March 2010, RH wrote Jefferson two emails regarding her complaint against Vaughan in which she indicated that she did not "think [she] want[ed] to pursue this matter any further," and that she had decided "to no longer be directly involved at this point in time." Ex. 6 & Ex. 12 to Mot. for Partial Summ. J., ECF Nos. 69-7, 69-13. In later correspondence, Jefferson referred to these emails as "dismiss[al]" and "withdrawal" of the complaint. Ex. 14 & Ex. 16 to Mot. for Partial Summ. J., ECF Nos. 69-15, 69-17. Based upon these communications, Vaughan argues he is "entitled, as a matter of law, to a ruling that RH withdrew her Code of Conduct complaint and that VLS and Jefferson were aware of the withdrawal." Mot. for Partial Summ. J. 13.

Defendants assert that RH's emails, when read in context, indicate that "she wanted to step back from playing an active and central role in the investigation and disciplinary process," but that she never "formally withdrew" the complaint. Opp'n to Mot.

for Partial Summ. J. 15, ECF No. 74.  Furthermore, they argue
that even if RH had formally withdrawn her complaint, this would
have no bearing on the legality of their actions because,
regardless of a complainant's wishes, they have an independent
obligation to investigate allegations of sexual assault and
sexual harassment.

The Court agrees with Defendants that whether RH's emails,
when read in context, constituted a "withdrawal" of her
complaint, or simply a statement that she wished to minimize her
involvement in an ongoing process, is a disputed fact that should
be resolved by the fact finder.  Furthermore, whether RH withdrew
her complaint is not a dispositive issue in this case, since,
once VLS and Jefferson learned of the alleged sexual assault, it
was reasonable for them to determine that VLS had an independent
obligation to its entire student body to follow through with its
investigation regardless of the wishes of the complainant.

In this vein, Defendants have asked the Court for a ruling
that "they were legally obligated, both under VLS's policies and
Title IX, to investigate RH's sexual assault complaint and to
pursue disciplinary proceedings to a resolution."  Opp'n to Mot.
for Partial Summ. J. 16-17.  In support of this request,
Defendants rely on language from the Code of Conduct which states
that VLS "is committed, and required by law, to take action when
it learns of potential harassment or discrimination" and "will

take all necessary steps to ensure that such a complaint is promptly investigated and addressed." Code of Conduct 12. They also rely on language from a Department of Education - Office for Civil Rights publication which states that a school's obligations to investigate and end harassment "are the school's responsibility whether or not the student who was harassed makes a complaint or otherwise asks the school to take action." U.S. Dept. of Education, *Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students or Third Parties*, 66 F.R. 5512, at 15 (January 19, 2001). In his reply brief, Vaughan has reasserted his position that RH withdrew her complaint but has failed to respond to Defendants' argument that, even if RH did withdraw her complaint, they had a legal obligation to investigate her allegations.

The Court agrees that, based upon the language contained in the Code of Conduct, VLS has a contractual obligation to investigate allegations of sexual harassment of which they become aware and which "could have a significant impact on the educational or employment environment or the reputation or integrity of VLS or could pose a threat to the safety or other interests of VLS or members of the VLS community." Code of Conduct 2. As discussed *supra*, an alleged sexual assault of one soon-to-be student by another, only days before the start of the semester, is without question an action that "could have a

significant impact on the educational . . . environment" and "could pose a threat to the safety or other interests of VLS or members of the VLS community," and this conduct surely falls within the Code of Conduct's definition of sexual harassment. Accordingly, Defendants are entitled to a legal ruling that VLS had a contractual obligation to investigate RH's sexual assault complaint against Vaughan.

Plaintiff's motion for partial summary judgment is **denied**, and Defendants' cross-motion for partial summary judgment is **granted**.

## V. Motions to Extend the Discovery Schedule

On June 10, 2011, Vaughan filed an assented-to motion to extend the current discovery schedule by forty-five days. On July 7, he filed a revised motion to extend the discovery schedule, asking the Court to extend the schedule by an additional forty-five days on account of scheduling difficulties that had arisen with his expert witnesses due to summer vacations. Both motions are **granted**. The discovery schedule is extended by a total of 90 days.

### Conclusion

For the foregoing reasons, Vaughan's motion for leave to amend is **granted in part** and **denied in part**. Vaughan may amend his complaint to include a Title IX claim, to revise his contract claim by excluding references to FERPA and by adding more

specific allegations pertaining to VLS's alleged breach of its obligations under the Code of Conduct, and to include factual allegations learned of or confirmed during discovery.  He may not, however, revive his intentional infliction of emotional distress claim against VLS and Jefferson, join Church Engle Associates, Inc. as a defendant in any of the claims, or use the term "rape" to describe RH's allegations against him.  Vaughan's motions to preclude retrial of the consent issue, to preserve the confidentiality of and seal excerpts from his deposition testimony, and for partial summary judgment are **denied**. Defendants' cross-motion for partial summary judgment is **granted**. Vaughan's motions to extend the discovery schedule are **granted.**

Dated at Burlington, in the District of Vermont, this 4th day of August, 2011.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge