# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| JOSHUA VAUGHAN, )<br>　　Plaintiff, )<br> )<br>v. )<br> )<br>VERMONT LAW SCHOOL, INC., )<br>and SHIRLEY JEFFERSON, )<br>　　Defendants. )<br> ) | Docket No. 2:10-cv-276-wks |

## DEFENDANTS' OPPOSITION TO
## PLAINTIFF'S MOTION FOR RECONSIDERATION

NOW COME Defendants Vermont Law School, Inc. ("VLS") and Shirley Jefferson, its Associate Dean for Student Affairs and Diversity ("Dean Jefferson"), by and through their attorneys, Dinse, Knapp & McAndrew, P.C., and submit this Response opposing Plaintiff's Motion for Reconsideration (ECF No. 85) in which Plaintiff asks the Court to reconsider its August 4, 2011 Memorandum and Order (ECF No. 82) or, in the alternative, to certify four questions to the Vermont Supreme Court and/or the Second Circuit.

Defendants oppose Plaintiff's Motion as it simply seeks to re-litigate issues previously decided in Defendants' favor. All such issues were decided by the Court based upon the facts and prevailing law, and Plaintiff has failed to articulate why the Court's prior rulings should be disturbed, beyond his desire for a different outcome. Plaintiff has not identified an unsettled and significant question of state law, the resolution of which would control the outcome of the case, so as to support certification to the Vermont Supreme Court. Nor does the Motion satisfy the statutory requirements for an interlocutory appeal to the Second Circuit. In support of its opposition, Defendants submit the following Memorandum.

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT 05402-0988
(802) 864-5751

1. **Standard of Review on Motion for Reconsideration**

Plaintiff has failed to meet the strict standard applicable to Motions for Reconsideration. Plaintiff seeks solely to re-litigate issues already decided without pointing to any intervening change in controlling law, new evidence, or the need to remedy a clear error of law or prevent obvious injustice. *See, Walkers v. Teachers Ins. and Annuity Ass'n of American College,* 2010 WL 3069829, *2 (D. Vt. Aug. 4, 2010) (quoting *Hester Indus. Inc. v. Tyson Foods, Inc.,* 160 F.R.D. 15, 16 (N.D.N.Y. 1995).

> It is well settled that "[t]he standard for granting a motion to reconsider is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir .1995). "A motion to reconsider should not be granted to relitigate an issue already decided." *Id.* "'Motions for reconsideration must be narrowly construed and the standard strictly applied to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court, to ensure finality, and to prevent the practice of a losing party examining a decision and then plugging the gaps of the lost motion with additional matters.'" *Lewis v. Rosenfeld*, 145 F.Supp.2d 341, 343 (S.D.N.Y.2001) (quoting *Ackoff–Ortega v. Windswept Pac. Entm't Co.*, 130 F.Supp.2d 440, 443 (S.D.N.Y.2000)).

*OfficeMax Inc. v. W.B. Mason Co., Inc.,* 2011 WL 2173789, *2 (D. Vt. Jun. 2, 2011). *See also, Anglo American Ins. Group v. Calfed Inc.*, 940 F. Supp. 554, 557 (S.D.N.Y. 1996) (noting that motions for reconsideration should be "narrowly construed and strictly applied to avoid repetitive arguments on issues that have been considered fully by the court.").

Plaintiff cites to no intervening change in controlling law, new evidence,[1] or clear error of law that must be corrected to prevent obvious injustice. Instead, Plaintiff's arguments are largely repetitive of those made in his previous submissions. He cites to no new facts or law in support of his position but contends that the Court's conclusions, with which he disagrees,

---

[1] Plaintiff attaches a report prepared by his expert, Donald Gehring, as Exhibit 18 to his Motion. The report is attached by reference in footnote 4 of his Motion. The Report is dated June 30, 2010 so Plaintiff could have attached it to his Reply in Support of his Motion for Partial Summary Judgment (ECF No. 79, filed July 25, 2011). Plaintiff now seeks to use this report to "plug gaps" in his original briefing.

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT 05402-0988
(802) 864-5751

were simply wrong. He has not, therefore, met the strict standard applicable to motions for reconsideration and his Motion should be denied.

**2.      Plaintiff's Motion to Certify Issues to Vermont Supreme Court or Second Circuit**

Plaintiff's Motion to Certify Issues to the Vermont Supreme Court or the Second Circuit should also be denied as Plaintiff's "legal issues" cannot satisfy the criteria for either certification or an interlocutory appeal, and consist largely of a disagreement as to the legal significance of the facts.

Plaintiff has failed to identify "an unsettled and significant question of state law that will control the outcome of the pending litigation," as required for certification to the Vermont Supreme Court. L. R. 74. He has also failed to identify "a controlling question of law as to which there is substantial ground for difference of opinion" or show that "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Neither of these statutory requirements has been met here. Section 1292 is "a rare exception to the final judgment rule" and its use is reserved for those cases where an intermediate appeal may avoid protracted litigation. *Koehler v. Bank of Bermuda, Ltd.*, 101 F.3d 863, 865-66 (2d. Cir. 1996). Moreover, granting an interlocutory appeal here would be contrary to the "historic federal policy against piecemeal appeals." *Curtiss-Wright Corp. v. General Electric. Co.,* 446 U.S.1, 8 (1980).

The four legal issues identified by Plaintiff are not true legal issues but amount to a difference of opinion over the legal significance of the facts. For example, the first issue is: "Whether a plaintiff alleging a claim for IIED must plead and prove, in addition to other requirements, that he was discharged or expelled from employment or school." Motion at 11. As discussed below, the elements of an intentional infliction of emotional distress claim are well-established under Vermont law. The Court correctly concluded that Defendants' conduct

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT 05402-0988
(802) 864-5751

3

as alleged in the proposed Amended Complaint does not rise to the requisite level of outrageous, atrocious, and utterly intolerable conduct because, even if Plaintiff's allegations as to the procedural deficiencies in the disciplinary process are assumed to be true, no disciplinary action was taken against Plaintiff. Order at 18-23. Plaintiff contends that he did not sexually assault another student or sexually harass female students and he was ultimately found to be not responsible on the charges. The alleged facts cannot support an intentional infliction of emotional distress claim, and this "legal issue" is simply an effort to obtain a different ruling, despite the factual deficiencies in the proposed Amended Complaint, and contrary to well-established Vermont law. Nor has Plaintiff cited any law from other jurisdictions to support his contention that a viable intentional infliction of emotional distress claim can be sustained under the facts alleged here.

The three other proposed "legal issues" are similarly flawed and do not present the type of pure questions of law for which certification or an interlocutory appeal is appropriate. The second issue, for example, is a disguised attempt to prevent Defendants from presenting evidence of their good faith basis for moving forward with the disciplinary process where Plaintiff has challenged the truthfulness of his accuser. The third and fourth issues address the scope of VLS's jurisdiction to discipline students for violations of the Code of Conduct. As discussed below, both *Fellheimer v. Middlebury College,* 869 F.Supp. 238 (D. Vt. 1994) and *Merrow v. Goldberg,* 672 F.Supp. 766 (D. Vt. 1987) establish that VLS had a contractual obligation to provide its students with the procedural safeguards promised in its Code of Conduct. As the Court concluded, VLS's Code of Conduct specifically authorized VLS to move forward with the disciplinary process under the circumstances here. Order at 32-35. The contract between a private school and a student is an implied one and it is well-recognized that "Courts should be wary of the wholesale application of commercial contracts in the academic

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT 05402-0988
(802) 864-5751

context." *Fellheimer,* 869 F.Supp. at 243. Plaintiff's phrasing of these two issues focuses exclusively on the availability of the Code of Conduct on VLS's website and ignores the full analysis used by the Court to conclude that Defendants have the authority to pursue disciplinary charges against a student accused of committing a sexual assault prior to orientation.

In short, no exceptional circumstances exist to support either certification or an interlocutory appeal at this juncture, and Plaintiff's Motion to Certify these issues to the Vermont Supreme Court or to the Second Circuit should be denied.

### 3. **Plaintiff's Proposed Intentional Infliction of Emotional Distress Claim**

Plaintiff alleges the Court erred in finding that the allegations in his proposed Amended Complaint failed to state a claim for intentional infliction of emotional distress. To plead an intentional infliction of emotional distress claim, a plaintiff must allege that the "defendants' conduct was so outrageous as to surpass 'all possible bounds of decency, and ... be regarded as atrocious, and utterly intolerable in a civilized community.' In addition, plaintiff must show that the conduct was undertaken intentionally or with reckless disregard of the probability of causing emotional distress, and that it did in fact result in extreme emotional distress." *Gallipo v. City of Rutland,* 163 Vt. 83, 94-95, 656 A.2d 635, 643 (1994) (quoting *Demag v. American Ins. Cos.,* 146 Vt. 608, 611, 508 A.2d 697, 699 (1986).

The facts in *Crump v. P & C Food Markets,* a wrongful termination case, illustrate the type of egregious conduct required to support an intentional infliction of emotional distress claim. 154 Vt. 284, 576 A.2d 441 (1990). Mr. Crump was called into a three hour meeting, without prior notice, where he was badgered repeatedly to sign a statement and to add material to the statement he had already signed. *Id.* at 289, 576 A.2d at 444-45. He feared his failure to sign a statement would adversely affect another individual. *Id.* Immediately after the meeting,

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT 05402-0988
(802) 864-5751

5

he was instructed to "clean out his desk" and was fired summarily after eighteen years of service. *Id.* The *Crump* court found that "the mere termination of employment will not support a claim for intentional infliction of emotional distress" but "if the manner of termination evinces circumstances of oppressive conduct and abuse of a position of authority vis-a-vis plaintiff, it may provide grounds for the tort action." *Id.* at 296, 576 A.2d at 448. Plaintiff has failed to make the necessary showing because Defendants' alleged actions simply do not rise to the level of outrageous conduct required. He was not disciplined, summarily or otherwise, and the Defendants' conduct was neither oppressive nor constituted an abuse of authority as needed to support a claim for intentional infliction of emotional distress.[2]

### 4. **Plaintiff's Proposed Negligence Claim Against CEA**

Plaintiff's arguments with respect to his proposed negligence claim against Church, Engle & Associates ("CEA") misses the broader point made by the Court in its Memorandum and Order. Plaintiff alleges in a conclusory way that he has been damaged by CEA's actions but he does not specify what damages CEA's actions caused, or explain his theory of causation. In his original Complaint, Plaintiff touted CEA's Report as exculpatory, and alleged that it demonstrated that RH's sexual assault complaint was not objectively viable. The Report did not make a final determination as to whether the alleged sexual assault or sexual harassment occurred and Plaintiff was ultimately found to not be responsible on both charges. Plaintiff has failed to allege any plausible link between CEA's actions and the damages he has allegedly suffered. Under these facts, the Court did not err in denying Plaintiff's Motion to bring this claim.[3]

---

[2] Nor does *Trepanier v. Getting Organized, Inc.,* 155 Vt. 259, 583 A.2d 583 (1990), cited by Plaintiff, support reinstating the intentional infliction of emotional distress claim. The *Trepanier* decision focuses on a collateral estoppel issue and a tortious interference with contractual relations claim − neither of which is at issue here.

[3] Plaintiff denies it would be unduly prejudicial to add CEA as defendants but the depositions of fact witnesses concluded on May 13, 2011and Plaintiff obtained the documents upon which he bases his allegations against CEA on February 18, 2011.

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT 05402-0988
(802) 864-5751

### 5. **Plaintiff's Motion to Preclude Re-Trial of Whether RH Consented**

Plaintiff disagrees with the Court's ruling that the truthfulness of RH's sexual assault complaint may be explored in discovery. The parties and the Court all recognize that one of the issues in this case is whether Defendants acted reasonably based upon the information available to them, not whether Plaintiff actually sexually assaulted RH. Plaintiff has impugned RH's truthfulness repeatedly, by, for example, asserting in his proposed Amended Complaint that her sexual assault complaint was false. *See* ECF No. 53-1 at ¶¶ 2, 3, 28, 70, 103(c). Despite this, he seeks to prevent Defendants from presenting evidence to show they acted reasonably in giving credence to RH's sexual assault complaint and moving forward with the disciplinary process. RH's testimony is relevant because it goes to her credibility and thus to the reasonableness of the Defendants' actions. Plaintiff has questioned the truthfulness of RH's account of what occurred on August 16, 2010 and, in response, Defendants are entitled to present evidence to the jury showing that RH's complaint was credible, her account of the assault did not change in any material way, and she did not withdraw or otherwise recant her claim during the disciplinary process.

Neither *Gomes v. University of Maine System*, 365 F. Supp. 2d 6 (D. Maine 2005) nor *Doe v. University of the South,* 2011 WL 1258104 (E.D. Tenn 2011) support Plaintiff's position. In neither of those cases was the credibility of the complainant a key issue in dispute, and the Defendants here are not seeking to re-try the disciplinary charges against Plaintiff. Plaintiff has made RH's credibility relevant by asserting that her complaint was false, Defendants wrongfully credited her account of what occurred on August 15-16, 2010, and wrongfully continued the disciplinary action after RH allegedly made changes to her account and withdrew her claim. Amended Complaint at ¶¶ 3(a), (f)-(i) (ECF 53-1). The Court's prior ruling should stand.

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT 05402-0988
(802) 864-5751

**6.     Plaintiff's Motion for Partial Summary Judgment**

Plaintiff contends the Court erred in finding that VLS has the authority to pursue disciplinary charges against a student accused of sexually assaulting another student the day before Orientation. Plaintiff argues that Vaughan did not formally manifest his intent to consent to the Code of Conduct as required for a contract to be enforceable.[4] Formal manifestation of intent is not required in the higher education setting. "The authority of a college to prescribe and enforce standards of student behavior is very broad." *Danso v. University of Connecticut*, 919 A.2d 1100, 1106 (citing *Goss v. Lopez*, 419 U.S. 565, 574 (1975)). "Private schools have broad discretion in making rules and setting up procedures to enforce those rules." *Ray v. Wilmington College*, 667 N.E.2d 39, 42 (Ohio Ct. App. 1995).

Courts have generally recognized that an <u>implied</u> contract exists between private institutions of higher education and their students. *See, e.g., Reynolds v. Sterling College, Inc.*, 170 Vt. 620, 621, 750 A.2d 1020, 1022 (2000) (noting that contract between student and college was formed when plaintiffs paid the enrollment fee and signed the registration statement); *Papelino v. Albany College of Pharmacy of Union University,* 633 F.3d 81, 93 (2d Cir. 2011) ("Under New York law, an implied contract is formed when a university accepts a student for enrollment"); *Keefe v. New York Law School,*, 897 N.Y.S.2d 94, 95 (N.Y. App. Div. 2010) (recognizing that promises set forth in a school's bulletins, circulars and handbooks, which are material to the student's relationship with the school, can establish the existence of an implied contract); *Bissessur v. Indiana University Bd. of Trustees,* 581 F.3d 599, 601-02 (7th Cir. 2009) (noting that a student may establish that an implied contract existed between

---

[4] Plaintiff's purpose in citing to *Tooley v. Robinson Springs Corp.*, 163 Vt. 627, 660 A.2d 293 (1995) is unclear. *Tooley* provides that: "A waiver is the intentional relinquishment or abandonment of a known right and may be evidenced by express words or by conduct." *Id.* at 628, 660 A.2d at 295, citing *Chimney Hill Owners' Ass'n, Inc. v. Antignani*, 136 Vt. 446, 453, 392 A.2d 423, 427 (1978). *Tooley* does not support Plaintiff's contention that he did not manifest an intent to be bound by VLS's Code of Conduct.

8

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT 05402-0988
(802) 864-5751

himself and the university and the catalogues, bulletins, circulars, and regulations of the institution may become a part of the contract); *Jarzynka v. St. Thomas University of Law,* 310 F. Supp. 2d 1256, 1269 (S. D. Fla. 2004) ("A university may prescribe rules of conduct and students who enroll in that university impliedly agree to conform to the university's rules."); *Ben-Yonatan v. Concordia College Corp.*, 863 F.Supp. 983, 987 (D. Minn. 1994) ("The relationship between the parties is contractual in nature, and the terms of the contract may be implied from the student handbook.").

The law does not require the formalities typically associated with a party's agreement to be bound by a contract in the commercial context. *See Fellheimer,* 869 F.Supp. at 243 ("Courts should be wary of the wholesale application of commercial contracts in the academic context."); *id.*, citing *Mahavongsanan v. Hall,* 529 F.2d 448 (5th Cir. 1976) (recognizing that educational contracts have unique qualities and are to be construed in a manner which leaves the school sufficient discretion to exercise its educational responsibility properly); *id.* citing *Slaughter v. Brigham Young University,* 514 F.2d 622, 626 (10th Cir. 1975) (acknowledging that those cases referring to the contractual relationship between a student and a private university "do not adopt all commercial contract law by their use of certain elements").

In addition to having access to the Code of Conduct on the VLS web-site, the web address of which was shared with incoming students over the summer prior to their arrival, Plaintiff moved to South Royalton on or about August 8, 2009 with the sole purpose of attending VLS, paid a deposit to VLS when he accepted a place in the incoming class, had been approved for student loans on the basis of attending VLS, and, prior to the start of orientation week, had introduced himself as a 1L when he met and socialized with other VLS students. No unfair surprise or prejudice exists here where Plaintiff has acknowledged that he assumed sexual assault would be a violation of VLS's policy prior to his arrival. Further, as

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT 05402-0988
(802) 864-5751

noted by the Court in its Order, VLS's Code of Conduct specifically allows VLS to discipline members of the VLS community for conduct that occurs before they start classes. Order at 34-35. *See also* Edward N. Stoner & John Wesley Lowery, *Navigating Past the "Spirit of Insubordination": A Twenty-First Century Model Student Conduct Code with a Model Hearing Script,* 31 J. Coll. & Univ. L. 1, 18-19 (2004) (defining a "student" to include persons "who have been notified of their acceptance for admission").[5]

Plaintiff seeks to bolster his contention that VLS lacked jurisdiction to discipline him for his pre-matriculation conduct by quoting from a report prepared by his expert witness, Donald Gehring. This report does not support granting Plaintiff's Motion for Reconsideration. First, its submission to the Court as an attachment to the Motion is inappropriate because this is not "new evidence," as it could have been submitted as part of his earlier briefing on the Motion for Partial Summary Judgment. The law frowns upon parties using Motions for Reconsideration to plug the gaps in their lost motions with additional matters. *See OfficeMax,* 2011 WL 2173789 at *2 (citing *Lewis v. Rosenfeld*, 145 F.Supp.2d 341, 343 (S.D.N.Y.2001)).

Second, Mr. Gehring's opinions do not constitute proper expert testimony, as contract interpretation is not a proper subject of expert testimony. The portion of Mr. Gehring's testimony upon which Plaintiff seeks to rely improperly opines as to the legal effect of the Code of Conduct and whether Defendants had the authority to initiate disciplinary proceedings in this matter. Contract interpretation is a proper subject for expert opinion only in specific circumstances where an expert is needed to provide information on the meaning of terms of art in a contract, which is not the case here. For example, in *Healy v. Fairleigh Dickinson University,* the court upheld the exclusion of a professor's expert witness proffered to interpret a university handbook, recognizing that "[e]xpert witnesses simply may not render opinions on

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT 05402-0988
(802) 864-5751

---

[5] The commentary to this definition further provides that: "Similarly, the Student Code would apply to students who have been accepted for admission but who are on campus prior to the beginning of their first semester." *Id.*

matters which involve a question of the law." 671 A.2d 182, 184 (N.J. Super. Ct. App. Div. 1996). In *F.H. Krear & Co. v. Nineteen Named Trustees,* the Second Circuit held that the trial court did not err in excluding the testimony of a witness in a contract dispute because "[i]t is not for witnesses to instruct the jury as to applicable principles of law, but for the judge." 810 F.2d 1250, 1258 (2d Cir. 1987). In *Villa v. Heilmann,* the Vermont Supreme Court upheld the exclusion of an expert witness in a breach of contract suit, citing the general rule that a witness may not give an opinion on a question of law. 162 Vt. 543, 550, 649 A.2d 768, 774 (1994). *See generally, United States ex rel. Compton v. Midwest Specialties, Inc.*, 142 F.3d 296, 301 (6th Cir. 1998) ("[E]xperts may not testify as to the legal effect of a contract."); *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir.1996) ("The interpretation of a contract is an issue of law which this court reviews de novo. . . . Expert testimony is not proper for issues of law."); Benjamin J. Vernia, Annotation, *Admissibility of Expert Testimony Regarding Questions of Domestic Law*, 66 A.L.R.5th 135 (1999) ("[C]ourts traditionally have restricted the use of expert testimony to factual, as opposed to legal, questions.").

Expert testimony is not needed to establish the legal requirements of the "contract" between VLS and Plaintiff or VLS's compliance with those requirements. Mr. Gehring's proposed expert opinion improperly invades the province of the Court to determine the jurisdictional scope of the Code of Conduct. His opinion that Plaintiff was not a student to whom the Code applied at the time of the sexual assault incident is simply his personal opinion, and his interpretation of the Code and its jurisdictional scope is not proper here. Inclusion of his expert report is also particularly inappropriate where, to date, Plaintiff has refused to make Mr. Gehring available to be deposed, thereby denying Defendants the

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT 05402-0988
(802) 864-5751

opportunity to explore his credibility and bring any questions about his credibility to the Court's attention.[6]

Plaintiff's Motion should be denied, therefore, with respect to the Court's ruling that VLS had the authority to pursue disciplinary charges against a student accused of committing a sexual assault prior to orientation. Order at 35.

## CONCLUSION

Defendants respectfully submit that Plaintiff has failed to meet the criteria for a Motion for Reconsideration, Motion for Certification to the Vermont Supreme Court, or Motion for Interlocutory Appeal to the Second Circuit Court of Appeals and his Motion should, accordingly, be denied.

Dated at Burlington, Vermont, this 2nd day of September, 2011.

                              DINSE, KNAPP & McANDREW, P.C.

                              By: Sophie E. Zdatny, Esq.
                                    Sophie Zdatny, Esq.
                                    Karen McAndrew, Esq.
                                    209 Battery St.
                                    Burlington, VT 05401
                                    (802) 864-5751
                                    szdatny@dinse.com
                                    Attorneys for Defendants

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT 05402-0988
(802) 864-5751

---

[6] Defendants note, for example, that Mr. Gehring is one of the individuals to whom the authors of the article on a Model Student Code are indebted. 31 J. Coll. & Univ. L. 1 at Fn a1. As noted above, the article recognizes that students should be considered part of an institution's community when they have been accepted and are on campus for the start of classes.

**CERTIFICATE OF SERVICE**

I, Sophie E. Zdatny, Esq., certify that on September 2, 2011, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system. The CM/ECF system will provide service of such filing via Notice of Electronic Filing (NEF) to the following NEF parties:

W. E. Whittington, Esq.

Dated at Burlington, Vermont, this 2nd day of September, 2011.

DINSE, KNAPP & McANDREW, P.C.

By: /s/ Sophie E. Zdatny, Esq.
     Sophie E. Zdatny, Esq.

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT 05402-0988
(802) 864-5751