```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                         DISTRICT OF VERMONT
```

JOSHUA VAUGHAN,                    :
                                   :
           Plaintiff,              :
                                   :
                                   :    Case No. 2:10-cv-276
      v.                           :
                                   :
VERMONT LAW SCHOOL, INC., and      :
SHIRLEY JEFFERSON,                 :
                                   :
           Defendants.             :


**MEMORANDUM AND ORDER**

Plaintiff Joshua Vaughan has moved for reconsideration of portions of the Court's Memorandum and Order of August 1, 2011, denying in part his motion for leave to amend his complaint and join Church Engle & Associates, Inc. as a party, denying his motion for partial summary judgment, and granting Defendants' cross-motion for partial summary judgment.  Mot. to Reconsider, ECF No. 85.  In the alternative, he asks the Court to certify four issues to the Vermont Supreme Court or to the United States Court of Appeals for the Second Circuit.  Familiarity with the factual and procedural background outlined in the Memorandum and Order is assumed.  For the reasons that follow, the motion to reconsider and the motion to certify are **denied**.

I. Legal Standards

It is well settled that "[t]he standard for granting a motion to reconsider is strict, and reconsideration will

generally be denied unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "A motion to reconsider should not be granted to relitigate an issue already decided." *Id.* "'Motions for reconsideration must be narrowly construed and the standard strictly applied to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court, to ensure finality, and to prevent the practice of a losing party examining a decision and then plugging the gaps of the lost motion with additional matters.'" *Lewis v. Rosenfeld*, 145 F. Supp. 2d 341, 343 (S.D.N.Y. 2001) (quoting *Ackoff-Ortega v. Windswept Pac. Entm't Co.*, 130 F. Supp. 2d 440, 443 (S.D.N.Y. 2000)). However, a motion for reconsideration should be granted where "it becomes necessary to remedy a clear error of law or to prevent obvious injustice." *Walker v. Teachers Ins. & Annuity Ass'n of American Coll.*, No. 1:09-CV-190, 2010 U.S. Dist. LEXIS 78604, at *5 (D. Vt. Aug. 4, 2010) (quoting *Hester Indus., Inc. v. Tyson Foods, Inc.*, 160 F.R.D. 15, 16 (N.D.N.Y. 1995)).

Pursuant to Local Rule 74, this Court may certify "an unsettled and significant question of state law that will control the outcome of a pending case" to the Vermont Supreme Court. The

Court may submit an otherwise unappealable order to the Second Circuit when the Court is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation[.]"  28 U.S.C. § 1292(b).  The Court of Appeals "may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order[.]"  *Id*.

## II. IIED Claims Against VLS and Jefferson

In the August 1 Memorandum and Order, the Court denied Vaughan's motion to amend his complaint by reviving his previously dismissed intentional infliction of emotional distress ("IIED") claims against VLS and Jefferson.  The Court found that such an amendment would be futile because the IIED claims "could not withstand a motion to dismiss pursuant to Rule 12(b)(6)."  *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)).

Vaughan argues that he is entitled to reconsideration of this ruling.  He believes the Court erroneously held that he failed to allege adequately the damages element of an IIED claim because he was not expelled from school.  Vaughan misreads the Court's ruling.

3

Rather than addressing the damages element of the IIED claim in its ruling, the Court found that Vaughan had failed to allege facts sufficient to make out the element of extreme and outrageous conduct. Under Vermont law, to prevail on an IIED claim, a plaintiff must show that the defendants' conduct was "so outrageous as to surpass all possible bounds of decency, and . . . be regarded as atrocious, and utterly intolerable in a civilized community." *Gallipo v. City of Rutland*, 656 A.2d 635, 643 (Vt. 1994) (internal quotation omitted). "It is for the court to determine as a threshold question whether a jury could reasonably find that the conduct at issue meets this test." *Jobin v. McQuillen*, 609 A.2d 990, 990 (Vt. 1992) (citing Restatement (Second) of Torts § 46, comment h).

In finding that addition of the IIED claim would be futile, the Court gave careful consideration to all of the conduct alleged in Vaughan's proposed amended complaint and found that it did not come close to meeting the threshold of extreme and outrageous conduct.[1] In particular, the Court noted that the two

---

[1] In its discussion, the Court specifically identified nine of the twenty-five allegations from Vaughan's proposed amended complaint which he asserted established the element of extreme and outrageous conduct. In his motion to reconsider, Vaughan faults the Court for not explicitly discussing all twenty-five allegations. The Court reiterates that it carefully considered all twenty-five allegations and, only by way of example, listed nine of the allegations that seemed most serious in determining that the totality of conduct alleged could not plausibly be described as "so outrageous as to surpass all possible bounds of decency, and . . . be regarded as atrocious, and utterly

cases relied upon by Vaughan for examples of extreme and outrageous conduct were distinguishable because the plaintiffs in both those cases had alleged that they had been fired or forced to withdraw from school. *See Crump v. P & C Food Mkts.*, 576 A.2d 441 (Vt. 1990) (upholding denial of defendant's motion for judgment notwithstanding the verdict on IIED claim where 18-year employee was terminated without prior notice, in three- to four-hour meeting during which he did not feel free to leave and was badgered to sign a statement); *McCormick v. Dresdale*, No. 09-474 S, 2010 U.S. Dist. LEXIS 41848, at *2 (D.R.I. 2010) (denying motion to dismiss IIED claim against university where student accused of rape was forced to withdraw from school after administrators failed to adequately investigate the complaint)).

Because Vaughan's motion to reconsider this ruling is based upon a flawed reading of the Court's decision, and because he fails to "point to controlling decisions or data that . . . might reasonably be expected to alter the conclusion reached by the court," the Court **denies** the motion. *Shrader*, 70 F.3d at 257.

In the alternative to reconsideration, Vaughan asks the Court to certify to the Vermont Supreme Court and/or the Second Circuit the "key legal finding[]" that "a plaintiff alleging a claim for IIED must plead and prove, in addition to other requirements, that he was discharged or expelled from employment

---

intolerable in a civilized community." *Gallipo*, 656 A.2d at 643.

5

or school." The Court made no such general legal finding in holding that the specific allegations made by Vaughan do not rise to the level of extreme and outrageous conduct. Rather, it merely explained that two cases upon which Vaughan relied for examples of sufficiently pled extreme and outrageous conduct were distinguishable because the plaintiffs in both those cases had alleged that they had been fired or forced to withdraw from school. *See Crump*, 576 A.2d 441; *McCormick,* 2010 U.S. Dist. LEXIS 41848, at *2.

Distinguishing the cases upon which a party attempts to rely is not the same as holding that these cases establish requirements which all future litigants who bring IIED claims must meet. It is very well possible that a litigant may establish the element of extreme and outrageous conduct without alleging that he was fired from a job or expelled from school. The Court merely held that the particular conduct alleged by Vaughan did not rise to the level of extreme and outrageous conduct. The motion to certify this issue to the Vermont Supreme Court and/or the Second Circuit is **denied**.[2]

---

[2] Even if this Court were of the opinion this issue "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order [would] materially advance the ultimate termination of the litigation," certification of the issue to the Second Circuit would not be permitted under 28 U.S.C. § 1292(b)since it has been well over ten days since the entry of the August 1 order.

### III. Negligence and IIED Claims Against CEA

The Court denied Vaughan's motion to amend his complaint by adding negligence and IIED claims against Church Engle & Associates, Inc. (CEA), which is not currently a defendant in this case. The Court ruled this way both because it found that allowing the joinder of this additional defendant at this stage of the litigation would cause undue prejudice by significantly delaying the readiness of this case for trial and because the proposed claims are futile.

With regard to undue prejudice, Vaughan points out that he filed the motion to amend shortly before the deadline for filing such motions set forth in the Court's scheduling order. He therefore asserts that denial of the motion makes the scheduling order "meaningless." Mot. to Reconsider 4. While the Court appreciates Vaughan's compliance with the scheduling order, filing a motion before a designated deadline does not guarantee that the motion will be granted. Based on its evaluation of the particular claims described in the motion to amend, the Court determined that allowing Vaughan to join CEA as a defendant at this stage would require extension of the discovery schedule, increasing the costs of the litigation and significantly delaying resolution of the case. Vaughan's own opinion that this delay "would not be substantial" or "out of line compared with other cases" notwithstanding, the Court has determined that allowing

7

the claims to go forward against CEA would be unduly prejudicial. *See Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) ("A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.").

Furthermore, Vaughan has not identified any "controlling decisions or data that the Court overlooked . . . that might reasonably be expected to alter" the Court's conclusion that his proposed claims against CEA would be futile. *Shrader*, 70 F.3d at 257. The Court concluded that the negligence claim against CEA could not survive a motion to dismiss because, although he included in his proposed amended complaint a boilerplate assertion that he "suffered damages proximately caused by Church Engle's negligence and wrongful actions," Am. Compl. ¶ 101, he failed to suggest any plausible causal link between CEA's actions in composing its investigative report, which ultimately did not conclude that Vaughan had sexually assaulted RH, and any damages he has suffered. Although Vaughan asserts in his motion to reconsider that "it is unusual to require more detailed allegations of causation at the initial pleadings stage," the Supreme Court has said otherwise. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555 (2007) (internal quotations omitted)(citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")). Vaughan's "formulaic recitation" of the causation element does not meet the pleading standards described in *Twombly*. *Id*.

Vaughan's attempt to flesh out a theory of causation in the briefing on his motion to reconsider by arguing that "the entire ensuing [disciplinary] process was based on the CEA report [and] would not have occurred but for the altered statements and biased CEA investigation," Mot. to Reconsider 3-4, is too little too late. "Motions for reconsideration must be narrowly construed and the standard strictly applied . . . to prevent the practice of a losing party examining a decision and then plugging the gaps of the lost motion with additional matters." *Lewis* 145 F. Supp. 2d at 343 (internal quotation omitted).

With regard to the IIED claim against CEA, in his motion to reconsider Vaughan simply "incorporates his argument as to the proposed IIED claim against VLS and Jefferson[.]" *See supra*. He points to no "controlling decisions or data that the Court overlooked" in concluding that he failed to allege extreme and outrageous conduct on the part of CEA. *Shrader*, 70 F.3d at 257. Accordingly, the Court is not convinced that it committed clear legal error in holding that Vaughan's allegations of questionable

9

editorial decisions by CEA -- in a report that ultimately declined to conclude that Vaughan was guilty of sexual assault -- did not rise to the level of conduct "so outrageous as to surpass all possible bounds of decency, and . . . be regarded as atrocious, and utterly intolerable in a civilized community." *Gallipo*, 656 A.2d at 643.

Since Vaughan has failed to show that the Court committed a clear error of law in denying his motion to join CEA as a defendant on two independent grounds -- undue prejudice and futility -- the motion to reconsider is **denied**.

IV. Denial of Motion to Preclude "Retrial" of RH's Complaint

In the August 1 order, the Court denied Vaughan's motion to "preclude 'retrial' of the issue of whether RH consented to sex, and rule that new evidence on that issue is irrelevant and may not be explored on discovery." Mot. to Preclude 1, ECF No. 62. In doing so, the Court found that, although whether or not RH was sexually assaulted is not an ultimate issue in this case, evidence pertaining to the truthfulness or falsity of her complaint against Vaughan is clearly relevant to the case because it has at least some "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. In particular, the Court found that, if RH's sexual assault allegation is true, that fact has some tendency to

make it more likely that the Defendants acted reasonably in commencing and pursuing their investigation of Vaughan. Conversely, if RH's complaint was false and the Defendants either failed to discover or ignored this, that fact has some tendency to make it more likely that the Defendants acted improperly. That the truth or falsity of RH's complaint is relevant to the this litigation is only emphasized by Vaughan's repeated assertions, in his pleadings in this case, that the complaint was false and that RH changed her account of the incident during the course of the investigation. *See* Compl. ¶¶ 2, 3, 13, 18, ECF No. 1.

In his motion to reconsider, Vaughan rehashes the same arguments he made in the underlying motion. In particular he reiterates his reliance on *Gomes v. Univ. of Maine Sys.*, 365 F. Supp. 2d 6, 14 (D. Me. 2005) and *Doe v. Univ. of the South*, No. 4:09-cv-62, 2011 U.S. Dist. LEXIS 35166 (E.D. Tenn. Mar. 31, 2011). These arguments remain unpersuasive. Both *Gomes* and *Doe*, two cases that also involved claims against educational institutions for their investigation of sexual assault complaints against students, held that the truthfulness of the underlying sexual assault complaints were not ultimate issues in the cases and therefore not appropriate subjects for summary judgment. Neither case held that factual disputes regarding the truthfulness of the sexual assault allegations were entirely

irrelevant to the litigation. Vaughan has not presented any "controlling decisions or data that the court overlooked" in declining to hold that the truthfulness of RH's complaint is irrelevant. *Shrader*, 70 F.3d at 257. The motion to reconsider is **denied**.

Vaughan also asks the Court to clarify whether its ruling regarding evidence relating to the truthfulness of RH's complaint governs trial as well as discovery. He suggests that his motion may have caused "confusion" because it was entitled a "motion to preclude retrial," when in fact he was asking the court the Court for a ruling that new evidence on the truthfulness of RH's sexual assault allegation is irrelevant and therefore may not be explored on discovery. To the extent that this is not clear from the August 1 order, the Court denied the entire motion. This means that the Court declined to rule either that this category of evidence would be irrelevant at trial or that it may not be explored on discovery.

Finally, Vaughan asks the Court to certify its ruling on this issue to the Vermont Supreme Court or to the Second Circuit. Vaughan has not made any compelling argument, or any argument at all, that the issue presented here -- the relevance of the truthfulness of one student's complaint against another student to a lawsuit challenging a school's investigation of that complaint -- merits certification. The Court, on its own, is

unable to imagine any plausible grounds for suggesting that its relatively straightforward ruling on the potential relevance of this evidence presents a "significant question of state law" under Local Rule 74 or "involves a controlling question of law as to which there is substantial ground for difference of opinion" under 28 U.S.C. § 1292(b).  Moreover, certification of this question would likely delay, rather than "materially advance[,] the ultimate termination of the litigation[.]"  28 U.S.C. § 1292(b).  The motion to certify is **denied**.

V. Partial Summary Judgment

In the August 1 order, the Court denied Vaughan's motion for partial summary judgment on several issues and granted Defendants' cross-motion for partial summary judgment on the same issues.  The Court ruled (1) that VLS has the authority to pursue disciplinary charges against a student accused of committing a sexual assault prior to orientation; (2) that VLS has the authority to pursue disciplinary charges against a student for allegations of off campus sexual harassment, where those allegations include unwelcome sexual advances that could have a significant impact on the educational environment and could pose a threat to the safety or other interests of VLS or members of the VLS community; and (3) that VLS had a contractual obligation to investigate RH's sexual assault complaint against Vaughan.  None of these rulings disposed of any of Vaughan's claims in

13

their entirety.

As an initial matter, Vaughan complains that the Court granted Defendants' cross-motion prior to the expiration of the 30-day response time for opposing dispositive motions. L.R. 7(a)(3)(A). The Court ruled before expiration of the 30-day response time because Vaughan replied to Defendants' opposition to his motion for partial summary judgment, which contained their cross-motion for partial summary judgment, on July 22, 2011. Since he had not indicated otherwise, the Court assumed that Vaughan's reply brief, which addressed the same issues on which Defendant's cross-moved for partial summary judgment, was to serve as his opposition to the cross-motion. *See* Reply to Resp. to Mot. for Partial Summ. J., ECF No. 79. Vaughan now represents that he had intended to file "a separate objection to the VLS/Jefferson request for summary judgment, which would have included the expert report of Donald Gehring." Mot. to Reconsider 7 n.4. He has included the Gehring report as an exhibit to the motion to reconsider. As explained *infra*, even if the Gehring report had been before the Court at the time it considered the motion and cross-motion for partial summary judgment, the result would have been the same.

Vaughan argues that the Court erred in ruling that VLS has the authority to pursue disciplinary charges against a student accused of committing a sexual assault prior to orientation.

Reasserting the same arguments made in his briefing on the underlying motions, he argues that VLS had no authority to discipline him for the alleged sexual assault because, at the time the assault allegedly occurred, he had not yet accepted the terms of the contract embodied in the VLS Code of Conduct. Vaughan's objection is based on his misunderstanding of the basis for the Court's ruling.

The Court did not explicitly rule that Vaughan had entered into the contract embodied in the VLS Code of Conduct at the time that the alleged sexual assault occurred.[3] Instead, the Court relied on the undisputed fact that Vaughan eventually did enter into that contract when he became a student at VLS. The Court then found that, regardless of when contract formation actually occurred, the terms of the contract gave VLS the authority to discipline Vaughan for conduct that "could have a significant impact on the educational or employment environment or the reputation or integrity of VLS or could pose a threat to the safety or other interests of VLS or members of the VLS community," even if that conduct occurred before the official start of school. Code of Conduct 2, Ex. 1 to Mot. for Partial

---

[3] Vaughan's misunderstanding seems to be based on the Court's summary of Defendants' argument that Vaughan was on notice of the contents of the Code of Conduct prior to enrolling at VLS because the code was available on a website and because he testified during a deposition that he arrived at VLS with the assumption that sexual assault would be a violation of any school's policies.

15

Summ. J., ECF No. 69-2.  In other words, when Vaughan became a student at VLS, he gave VLS the authority to discipline him for previous conduct.  By way of example, the Court pointed out that an educational institution can discipline a student under its code of conduct for misrepresentations made on his or her application for admission even though that conduct occurred before the student entered into the contract embodied in the code of conduct.  *See North v. West Virginia Bd. of Regents,* 332 S.E.2d 141, 144-45 (W. Va. 1985) (holding that disciplinary rules applied to conduct of individual in applying for admission even though he was not yet a student when actions took place).  Vaughan's motion to reconsider therefore does not call the Court's ruling into question.

Similarly, although Donald Ghering opines, in an expert report appended to the motion to reconsider, that Vaughan was not a student at the time of the alleged sexual assault, this opinion does not affect the basis of the Court's ruling.  Ghering Report, ECF No. 85-1.  Moreover, although Ghering expresses his opinion that a code of conduct that allows a school to discipline a student for conduct that occurred before he or she became a student "is an absolute travesty and exists nowhere in higher education that [he is] aware of[,]" *id*. at 6, the fact that an expert witness finds the terms of a contract distasteful, or disagrees with the Court's interpretation of a contract, is not a

16

legitimate reason to nullify that contract.  *See Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 509 (2d Cir. 1977) ("legal opinions as to the meaning of the contract terms at issue" are not admissible as expert testimony because "the question of legal effect [of a contract] is for the judge"); *Luizzi v. Pro Transp., Inc.*, No. 02 CV 5388, 2011 U.S. Dist. LEXIS 46862, at *10 (E.D.N.Y. May 2, 2011) ("opinion as to the scope of the obligations created by [a] contract [] is not a proper subject matter for an expert opinion").  The motion to reconsider the ruling that VLS has the authority to pursue disciplinary charges against a student accused of committing a sexual assault prior to orientation is **denied**.

Based upon his misunderstanding of the Court's ruling on this issue, Vaughan asks the Court to certify to the Vermont Supreme Court or to the Second Circuit the issue of "whether a party can be held to have consented to a contract by virtue of it being placed on a website to which he was not directed and of which he was not aware."  As explained *supra*, the Court did not draw such a conclusion in ruling that VLS has the authority to discipline students, once school has started, for pre-enrollment misconduct that affects the school.  Accordingly certification of the issue, as framed by Vaughan, will not advance resolution of the litigation.  The motion to certify this issue is **denied**.

Vaughan also asks the Court to reconsider its ruling that,

17

under the Code of Conduct, VLS has the authority to pursue disciplinary charges against a student for allegations of off campus sexual harassment, where those allegations include unwelcome sexual advances that could have a significant impact on the educational environment and could pose a threat to the safety or other interests of VLS or members of the VLS community. Vaughan complains that "there is no way that [his off campus behaviors] could reasonably constitute a danger to student safety or impairment to the educational environment." Mot. to Reconsider 9. Once again, Vaughan's objection is based on his misunderstanding of the Court's ruling. In granting Defendants partial summary judgment on this issue, the Court explicitly stated that it was making "no judgment as to the disputed factual question of whether the sexual harassment allegations leveled against Vaughan are true." Aug. 1 Mem. and Order 36, ECF No. 82. Accordingly, Vaughan's attempt to inject a factual dispute into what is a relatively straightforward interpretation of language contained in the VLS Code of Conduct is unavailing. The motion to reconsider this ruling is **denied**.

Finally, Vaughan asks the Court to reconsider its ruling that VLS had a contractual obligation to investigate RH's sexual assault complaint against Vaughan. He states that his argument for reconsideration of this ruling "flows from [what he perceives as] the Court's ruling that Vaughan contractually agreed to be

18

bound by the Code of Conduct pre-matriculation by virtue of its posting on the VLS website." As explained *supra*, the Court never ruled that Vaughan accepted the Code of Conduct prior to beginning school at VLS. Instead the Court held that, once he enrolled, he entered into a contract that gave VLS the authority to investigate conduct that "could have a significant impact on the educational or employment environment or the reputation or integrity of VLS or could pose a threat to to the safety or other interests of VLS or members of the VLS community," even if that conduct occurred before the official start of school. Code of Conduct 2. As explained in the August 1 order, this contract also created an obligation on the part of VLS to investigate such conduct. The motion to reconsider this ruling is **denied**.

In the alternative, Vaughan asks the Court to certify to the Vermont Supreme Court or to the Second Circuit the issue of "[w]hether VLS can be contractually obligated to investigate pre-matriculation conduct of a soon-to-be student based solely on VLS' unilateral actions in placing the Code of Conduct on its website." Mot. to Reconsider 11-12. The Court did not draw any such conclusion in its August 1 order, so certifying it to an appellate court would do nothing to advance the termination of this litigation. The motion to certify is **denied.**

Dated at Burlington, in the District of Vermont, this 12th day of September, 2011.

                                          <u>/s/ William K. Sessions III</u>
                                          William K. Sessions III
                                          U.S. District Court Judge